## TATE v. McGRAW.
### No. 11251.

Court of Civil Appeals of Texas. Dallas.
May 17, 1934.

Rehearing Denied April 21, 1934.

Hamp P. Abney and N. B. Birge, both of Sherman, for appellant.

Webb & Webb, of Sherman, for appellee.

LOONEY, Justice.

The disposition made of the case does not require any statement to be made of the pleadings, other than to say that the action involves the title to 17 acres of land, the issue as to ownership was tendered by each party, McGraw sought recovery in a formal action of trespass to try title, and Tate, in same manner, sought recovery in a cross-action. McGraw claims through a sheriff's deed under a default judgment in favor of the state against Tate in a tax suit, and, unless he was thus divested of title, the court erred in rendering judgment against him.

The land was the homestead of Tate and family and had been since 1919. The state, through proper officials, instituted suit against him, returnable to the October term, 1926, seeking recovery of delinquent state, county, and school district taxes against the land, also $3 poll taxes, the statutory penalty and costs of suit, asserting its lien, which was foreclosed upon the land, to satisfy taxes due thereon, also the poll taxes, penalty, and court costs; the decree directed the sheriff to seize and sell the land in the ordinary form, and with the proceeds to satisfy the taxes, interest, penalty, costs, etc.

Thus it appears that Tate's homestead was ordered sold for the payment, not only of taxes due thereon, but for accrued penalties, poll taxes, and court costs; and accordingly, on May 27, 1927, an order of sale issued, under which the sheriff advertised, and on July 5, 1927, sold, the land. T. W. McGraw became purchaser for $35, and later, conveyed to plaintiff, who, at the expiration of the statutory period, was placed in possession, under a writ authorized by the default judgment. The record discloses further that, after being placed in possession, plaintiff destroyed 30 peach trees growing upon the premises, of the value of $2 each, that the rental value of the premises was $50 per annum, and that the land was valued for taxation at $410.

The court concluded, as a matter of law, that, by failing to answer the state's suit, Tate estopped himself to raise the homestead question in avoidance of the foreclosure proceedings and sheriff's deed, and was not permitted to make a collateral attack upon the judgment; hence was not entitled to recover either the land, damages for the fruit trees destroyed, or the rental value of the premises.

The trial court's conclusions are defended by appellee (excerpts from the brief of counsel) as follows: "We have a judgment of the district court, regular on its face, with service upon the defendant. The matters that he sets up now as a defense to this suit might have availed him, if he had plead them in that case. He would have had an opportunity there to have shown the truth of his statements, and the State would have had the opportunity of questioning them, but he did not see fit to enter his plea, neither did he see fit to appeal therefrom, and for that reason he cannot now complain that the judgment was not regular on its face and valid. * * * We submit that the court was not in error in holding that said deed under said judgment estopped the defendant from claiming now any interest in the land, and that this judgment should be affirmed."

It is obvious that the idea of the trial court was, and the contention of appellee's counsel is, that, having failed to answer the state's tax suit, appellant estopped himself to assert his homestead exemption in avoidance of the sheriff's deed; such defense being in effect a collateral attack upon the judgment, which was not permissible.

While Tate failed to answer the suit, yet, on October 2, 1926 (appearance day), he paid the district clerk all accrued costs, amounting to $8, also paid the tax collector the full amount of taxes, penalties, and interest claimed by the state; the collector executing a redemption receipt evidencing such payment, reciting the docket number of the cause, showing conclusively that the payment was in full settlement of the taxes, penalties, and interest sued for. In this changed status, we think it became the plain duty of the official in charge of the litigation to have dismissed the suit, as the state had no lien upon or salable interest in appellant's land after the cause of action was satisfied. However, the suit was not dismissed; on the contrary, a judgment by default was taken under which appellant's homestead was sold, resulting in the tax deed under which appellee asserts superior title to the land.

We are inclined to the opinion that, after the state's cause of action was satisfied, the officials, through whom the state acted in obtaining and executing the default judgment were without power in the premises, and, as a corollary, that one obtaining title to land under such circumstances was charged with knowledge of all facts a proper investigation and inquiry would have disclosed. Proceedings for the collection of taxes by suit being matters of public record and conducted by public officials, we think intending purchasers are chargeable with knowledge of all defects which the records disclose, or which, on reasonable inquiry, would be disclosed. Sale of property for taxes is in derogation of private rights; hence a purchaser thereat is within the rule of caveat emptor, and will take no better title than the state could lawfully sell, and where, as in the instant case, the state had no salable interest (all taxes having been fully paid), the attempted sale through the instrumentality of an unauthorized judgment passed nothing to the purchaser. 61 C. J. 1304, § 1804.

The central thought in the adjudicated cases is that the power to sell property for the payment of taxes must exist, and this without regard to the means or instrumentality adopted by the state to accomplish such purpose. Where one claims title under a summary sale, the burden is upon him to show that all prerequisites leading to and authorizing the sale were performed (Hadley v. Tankersley, 8 Tex. 12; Meredith v. Coker, 65 Tex. 29, 31; Brown v. Bonougli, 111 Tex. 275. 279, 232 S. W. 490), and, although the statute (article 7330, Rev. St. 1925) provides that " * * * any such deed (under foreclosure) shall be held in any court of law or equity in this State to vest good and perfect title in the purchaser thereof, subject to be impeached only for actual fraud," it is manifest that this provision contemplates a valid foreclosure and sale for unpaid taxes; otherwise the statute would sanctify the confiscation of a citizen's property through unauthorized acts of its public officials, in taking and executing unauthorized judgments, in fact, acts which the state could not validly authorize. It is true that the vice in the judgment does not appear on its face; yet we think that the payment by appellant of the taxes, penalty, and interest sued for, revealing the invalidity of the default judgment, may be established aliunde the record. Cline v. Niblo, 117 Tex. 474, 8 S.W.(2d) 633, 66 A. L. R. 916; Harrison v. Orr (Tex. Com. App.) 296 S. W. 871, 875. Furthermore, the record disclosing that the land was valued for purposes of taxation at $410, but sold for only $35, a grossly inadequate price, neither the purchaser nor his vendee is entitled to the protection accorded an innocent purchaser. 61 C. J. 1321, § 1847; Orr v. Wallace (Tex. Civ. App.) 285 S. W. 650, 653; Harrison v. Orr (Tex. Com. App.) 296 S. W. 871, 875; Green v. Robertson, 30 Tex. Civ. App. 236, 70 S. W. 345, 347; Huff v. Maroney, 23 Tex. Civ. App. 465, 56 S. W. 754.

However, it is not deemed necessary that our decision be based on the theory just advanced, and we do not do so, but predicate our action on the theory which we will now discuss. Conceding, for the discussion, that the presumption must be indulged that the default judgment was legally procured, what then? A judgment ordering sale of land to satisfy taxes, interest, penalty, and costs may be altogether valid, whilst an order, directing the sale of homestead property to satisfy obligations other than taxes due thereon, is quite another matter. Appellant's homestead was ordered sold, in fact was sold by the sheriff under an order of sale, to satisfy, not only the taxes due thereon, but poll taxes as well, besides the penalty imposed by statute for delinquency and costs of suit. As the items named, other than taxes due upon the homestead, constituted no lien, it follows

that the attempted foreclosure as to these was without jurisdiction and that the order of sale and the sheriff's deed thereunder, were void and passed no title.

In the able and exhaustive opinion, in Cline v. Niblo, 117 Tex. 474, 8 S.W.(2d) 633, 66 A. L. R. 916, a case in point, Chief Justice Cureton announced the doctrine that the constitutional and statutory exemptions of homestead property are dominant and controlling limitations upon all the powers of government and upon all individuals and officers engaged in the execution of such powers; that judicial sales of homestead property, in the absence, as in the case at bar, of an affirmative showing in the decree that the homestead question was adjudicated and disposed of in the judgment leading up to the sale, may be inquired into and declared a nullity in a collateral proceeding. Also see Hayes v. Taylor, 17 Tex. Civ. App. 449, 43 S. W. 314; Wright v. Straub, 64 Tex. 64; Higgins v. Bordages, 88 Tex. 458, 31 S. W. 52, 803, 53 Am. St. Rep. 770.

On the theory last discussed, we reverse the judgment of the court below and render judgment that appellee take nothing and that appellant recover of appellee the land involved, also $60 damages for the destruction of the fruit trees, and $87, the reasonable rental value of the premises from the time appellant was evicted to the trial below, and it is so ordered.

Reversed and rendered for appellant.