**Michel SALOMON and Malena Salomon, Appellants,**

v.

**Isabelle (Salomon) LESAY and Khalaf S. Khalaf, Appellees.**

**No. 01–09–01022–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 30, 2012.

Thomas Edward Reder, Houston, TX, for Appellants.

Kathleen Rolston Robbins, Kathleen Rolston Robbins PC, Teri A. Walter, Walter Law Firm PC, Houston, TX, for Appellees.

Panel consists of Justices JENNINGS, BLAND, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

Appellants Michel and Malena Salomon appeal from a judgment concerning real property that they allege is their homestead. Appellee Isabelle Lesay, the ex-wife of Michel Salomon, had obtained a lien against the Salomons' property for unpaid child support in a separate pro-

ceeding. Lesay foreclosed on the lien, and appellee Khalaf S. Khalaf purchased the property at a public auction. The Salomons sued Lesay for filing a fraudulent lien, and they sued Khalaf to quiet title. Lesay and Khalaf filed counterclaims. The trial court subsequently struck Michel's pleadings for his repeated failures to appear at court-ordered depositions. The jury found that the property was Malena's homestead, but it also found that Lesay did not fraudulently file her lien. The court entered a judgment declaring that Malena had an undivided, one-half, homestead interest in the property. The judgment also declared that Khalaf had acquired Michel's undivided, one-half, non-homestead interest in the property as tenant in common with Malena.

The Salomons appeal, arguing (1) there was insufficient evidence to support the jury's verdict that Lesay had not fraudulently filed her lien, (2) a flawed jury instruction was submitted on the fraudulent lien claim, (3) the relief awarded to Lesay and Khalaf violated the constitutional homestead exemption and was unsupported by the pleadings, and (4) the trial court abused its discretion when it struck Michel's pleadings.

We conclude that the trial court erred when it entered a judgment that gives effect to a child support lien and a forced sale that are void under the homestead exemption of the Texas Constitution. We affirm the judgment of the trial court in part, reverse in part, and remand for further proceedings with respect to requests for statutory damages, costs of court, and attorney's fees.

## Background

Isabelle Lesay and Michel Salomon were divorced in Travis County in 2001. Michel was ordered to pay spousal maintenance and child support for the couple's minor child.

Shortly after the divorce, Michel and Malena Salomon married. In 2004, the Salomons bought a house located in Spring, Harris County, near where several of Malena's family members resided. The deed identified both Michel and Malena as the grantees. The Salomons did not occupy the residence full-time. Michel traveled frequently on business, while Malena took care of Michel's elderly mother in France during much, if not most, of the time beginning in 2006.

In a separate proceeding, a Travis County district court found that Michel was in arrears on his child support and spousal maintenance payments. The court held him in contempt, and in 2005 it issued a capias for his arrest for failure to appear at an enforcement hearing. Around that time, Lesay and her attorneys discovered that the Salomons had purchased the property in Spring, and they filed with the Harris County Clerk a notice of child support lien on "all nonexempt real and personal property" of Michel Solomon that was located or recorded in Texas. *See* TEX. FAM.CODE ANN. § 157.313(a)(9) (West 2008) (specifying contents of child support lien notice). The lien notice specifically identified the Spring property as nonexempt property. Lesay testified that when she checked the public records as late as February 2006, after filing the lien notice, the Harris County Appraisal District records did not reflect that the Salomons' Spring property was their homestead.

After Lesay obtained a writ of execution on the child support lien, a deputy constable sent a letter to the Salomons' house in February 2006, requesting a discussion about satisfying the judgment. Shortly thereafter, the Salomons filed with the Harris County Clerk an application for

homestead exemption and an affidavit designating the property as their homestead.

A constable's sale of the Salomons' house was scheduled for March 2006. Three days before the scheduled sale, an attorney for the Salomons sent a letter to Lesay's attorney, advising that his clients had homesteaded the property and requesting that Lesay intervene to halt the sale. The day before the scheduled sale, the Salomons filed in Harris County district court an application for a temporary restraining order to enjoin the sale, in addition to claims against Lesay for declaratory judgment, slander of title, and filing a fraudulent lien. The trial court entered the requested TRO that same day.

Lesay counterclaimed for declaratory judgment that the property was not a homestead. The trial court extended the TRO by agreement of the parties until May 2006. However, the Salomons did not pay the $50,000 bond required to maintain the order. In March 2007, Khalaf S. Khalaf purchased the property at a constable's sale. Khalaf sent a letter to the Salomons in June, demanding that they vacate the premises.

After receiving Khalaf's letter, the Salomons amended their pleadings to join Khalaf as a defendant. Their amended petition sought declaratory judgment that the Spring property was their homestead and exempt from forced sale, that the child support lien was invalid, and that the constable's deed transferring title to Khalaf was void. The Salomons reasserted their claim against Lesay for filing a fraudulent lien and added a claim for wrongful execution. Khalaf counterclaimed against the Salomons to quiet title.

When the trial court entered the agreed order in March 2006 to extend the TRO, it included an order that both Salomons appear for depositions in April. However, Michel did not comply with the order. In May 2006, the trial court again ordered Michel to appear for deposition no later than the end of June. Again, Michel did not comply. In October 2007, the trial court ordered that Michel appear for deposition in December. The trial court also imposed a fine of $1,000 and warned that Michel's pleadings were subject to being struck if he did not appear. Once again, Michel did not comply. Lesay moved for sanctions, and in January 2009, the trial court held a hearing on the motion. When asked by the court why Michel had not appeared for his deposition, the Salomons' counsel explained that Michel suspected Lesay would have him arrested on the capias related to child support arrearages. The court struck Michel's pleadings and imposed a fine of $2,000 against him.

A two-day jury trial was conducted on the remaining claims asserted by Malena, Lesay, and Khalaf. The jury returned a special verdict, answering "yes" to the question of whether the house was the homestead of Malena Solomon and "no" to the question of whether Lesay had filed a fraudulent lien. The trial court signed a judgment declaring, among other things, that Lesay's child support lien was valid as to Michel but invalid as to Malena, and that Khalaf's deed was not void as to Michel but void as to Malena.

The Salomons filed motions for new trial and to modify or clarify the judgment. The court denied the motion for new trial, but it entered a corrected final judgment in which it declared and ordered the following:

Based on the jury's verdict regarding the portion of the case regarding the pleadings of MALENA SALOMON, it is ADJUDGED, ORDERED AND DECREED that:

1. ON the claim of DECLARATORY JUDGMENT, the jury finds in favor

of Plaintiff MALENA SALOMON and against Defendants ISABELLE (SALOMON) LESAY and KHALAF S. KHALAF, and that pursuant to the Texas Uniform Declaratory Judgment Act, Chapter 37 of the Texas Civil Practice and Remedies Code, it is declared that:

A. Plaintiff MALENA SALOMON'S real property residence described as follows is the homestead of MALENA SALOMON, exempt from forced sale under the Constitution and Law of the State of Texas:

Lot Forty (40), in Block Twenty (20), of Champion Forest, Section Three (3), a subdivision in Volume 266, Page 139 of the Map Records of Harris County, Texas; also known as

16150 Hex[h]am, Spring, Harris County, Texas 77379 (the "real property").

B. The Notice of Child Support Lien filed by Defendant, ISABELLE (SALOMON) LESAY, on May 23, 2005 in the Harris County Real Property Records, File number Y484196, is invalid against the above described real property and that Defendant, ISABELLE (SALOMON) LESAY as Judgment Creditor, shall release any and all liens existing by reason of the child support lien and judgment and the filing of the Notice of Child Support Lien against and only against the above-described real property residence;

C. The Abstracts Judgment filed by Defendant, ISABELLE (SALOMON) LESAY, in the Harris County Real Property Records on November 14, 2005 under Clerk's File # Y896917 and on February 9, 2006 under Clerk's File # Z081187, are invalid against the above described real property and that Defendant,

ISABELLE (SALOMON) LESAY, as Judgment Creditor, shall release any and all liens existing by reason of the Judgment and the filing of the abstracts of Judgment against and only against the above described real property residence; and

D. The Deed Under Execution issued to Defendant, KHALAF S. KHALAF (aka KHALAF SAMAN KHALAF) filed under Harris County Clerk File # 2007290995 is void and invalid against the above described real property and that Defendant, KHALAF S. KHALAF (aka KHALAF SAMAN KHALAF), and Defendant, ISABELLE (SAL[OMO]N) LESAY, shall release any and all liens or claims against the real property existing by reason of the Deed Under Execution and the Judgment under the Abstracts of Judgment filed by Defendant, ISABELLE (SALOMON) LESAY against and only ag[a]inst the above described real property.

In regard to the claim for homestead by declaratory judgment brought by Plaintiff MICHEL SALOMON, the pleadings were struck by the Court due to the failure of Plaintiff MICHEL SALOMON to adhere to multiple court rulings regarding discovery, and, therefore, there were no pleadings and no testimony of MICHEL SALOMON to submit to the jury, the Court makes the following ruling:

IT IS ADJUDGED, ORDERED AND DECREED that:

1. On the claim of DECLARATORY JUDGMENT, the Court finds in favor of Defendant ISABELLE (SALOMON) LESAY and Defendant KHALAF. S. KHALAF and against Plaintiff MICHEL SALOMON and that pursuant Texas Uni-

form Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code, it is declared that:

A. Plaintiff MICHEL SALOMON'S real property residence described as follows is NOT the homestead of MICHEL SALOMON and is NOT exempt from forced sale under the Constitution and Law of the State of Texas:

Lot Forty (40), in Block Twenty (20), of Champion Forest, Section Three (3), a subdivision in Volume 266, Page 139 of the Map Records of Harris County, Texas; also known as

16150 Hexham, Spring, Harris County, Texas 77379 (the "real property").

B. Plaintiff MICHEL SALOMON as joint tenant with MALENA SALOMON owns a current undivided, non-homestead interest in the real property residence.

C. The Notice of Child Support Lien filed by Defendant, ISABELLE (SALOMON) LESAY, on May 23, 2005 in the Harris County Real Property Records, File Number Y484196, is valid against the above described real property owned by Plaintiff MICHEL SALOMON and that Defendant, ISABELLE (SALOMON) LESAY, as Judgment Creditor, shall not release any and all liens existing by reason of the child support lien and judgment and the filing of the Notice of Child Support Lien against and only against the above-described real property residence.

D. The Abstract of Judgment filed by Defendant, ISABELLE (SALOMON) LESAY, in the Harris County Real Property Records on November 14, 2005 under Clerk's File # Y896917 and on February 9, 2006 under Clerk's File # Z081187, are valid against the above described real property interest owned by Plaintiff MICHEL SALOMON and that Defendant, ISABELLE (SALOMON) LESAY, as Judgment Creditor, shall not release any/all liens existing by reason of the Judgment and the filing of the abstracts of Judgment against and only against the above described real property residence; and

D. The Deed Under Execution issued to Defendant, KHALAF S. KHALAF, (aka KHALAF SAMAN KHALAF) FILED UNDER Harris County Clerk File # 20070490995 is not void and is valid against the above described real property interest owned by Plaintiff MICHEL SALOMON and that Defendant, KHALAF S. [KH]ALAF (aka KHALAF SAMAN KHALAF'), and Defendant, ISABELLE (SALOMON) LESAY shall not release any/all liens or claims against the real property existing by reason of the Deed Under Execution and the Judgment under the Abstracts of Judgment filed by Defendant, ISABELLE (SALOMON) LESAY against and only against the above-described real property.

F. Defendant KHALAF S. KHALAF (aka KHALAF SAMAN KHALAF') is [e]ntitled to the current undivided, non-homestead interest owned by Plaintiff MICHEL SALOMON as a joint tenant with MALENA SALOMON acquired by sale at Harris County auction on the court house steps on March 6, 2007 as set forth in the Deed Under Execution issued to Defendant KHALAF S. KHALAF (aka KHALAF SAMAN

KHALAF) filed under Harris County Clerk File # 20070490995.

2. Defendant ISABELLE (SALOMON) LESAY shall have and recover judgment in the amount of $2,000.00 from and against Plaintiff MICHEL SALOMON, being the sanctions awarded against MICHEL SALOMON by the court's order of January 29, 2009.

3. Costs are to be paid by the party that incurred the costs.

In summary, with respect to Malena Salomon's pleadings, the trial court's judgment declared:

(i) the house is the homestead of Malena Salomon,

(ii) Lesay's child support lien and corresponding judgment are invalid, and Lesay shall release all liens against the house by reason of the lien and judgment, and

(iii) Khalaf's deed is void and invalid, and Khalaf and Lesay shall release all liens and claims by reason of the deed.

With respect to Michel Salomon's pleadings, which were struck for failure to comply with multiple discovery rulings, the trial court declared:

(i) the house is not the homestead of Michel Salomon,

(ii) Michel Salomon, as joint tenant with Malena Salomon, owns an undivided, non-homestead interest in the house,

(iii) Lesay's child support lien and corresponding judgment are valid, and Lesay shall not release any liens by reason of the lien and judgment,

(iv) Khalaf's deed is not void and is valid, and Khalaf and Lesay shall not release all liens and claims by reason of the deed, and

(v) Khalaf is entitled to the undivided, non-homestead interest owned by Michel Salomon as joint tenant with Malena Salomon.

The Salomons have appealed from this final judgment. Neither Lesay nor Khalaf have challenged the judgment on appeal.

## Analysis

### I. Sufficiency of the evidence on fraudulent lien claim

■ In their first issue, the Salomons argue that the evidence at trial conclusively proved that Lesay's child support lien was fraudulent, and therefore the jury's finding to the contrary was not supported by legally or factually sufficient evidence. Lesay argues that the evidence showed that she had a good faith belief that the Salomons' property was non-homestead, and that the Salomons failed to prove otherwise. Khalaf similarly argues that the evidence supported a conclusion that Lesay reasonably believed that the Salomons' primary residence was in France rather than Texas, and therefore she reasonably believed that the property was not covered by the homestead exemption.

In a legal sufficiency, or "no-evidence" review, we determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). In making this determination, we credit favorable evidence if a reasonable jury could, and we disregard contrary evidence unless a reasonable jury could not. *Id.* We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id.* at 822. So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the jury. *Id.* The jury is the sole judge of the credibility of the witnesses and the weight accorded to their testimony. *Id.* at 819. Although we con-

sider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

In a factual-sufficiency review, the court must examine both the evidence supporting and contrary to the judgment. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001); *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). "When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.,* 46 S.W.3d at 242. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Klekar v. S. Pac. Transp. Co.,* 874 S.W.2d 818, 827 (Tex.App.-Houston [1st Dist.] 1994, writ denied). A jury may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Eberle v. Adams,* 73 S.W.3d 322, 327 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). The reviewing court must assume that the fact-finder resolved all evidentiary conflicts in accordance with its decision if a reasonable person could have done so. *See id.* An appellate court may not substitute its own opinion contrary to the fact-finder's implicit credibility determinations. *Id.*

■ Because Michel's pleadings were struck by the trial court, he had no claims presented to the jury. Malena's cause of action, alleging that Lesay filed a fraudulent lien against her property, is rooted in Section 12.002 of the Civil Practice and Remedies Code:

(a) A person may not make, present, or use a document or other record with:

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:

(A) physical injury;

(B) financial injury; or

(C) mental anguish or emotional distress.

TEX. CIV. PRAC. & REM.CODE. ANN. § 12.002(a) (West Supp.2011). Malena, as the party asserting a cause of action under Section 12.002, had the burden to prove the elements in the statute. *Aland v. Martin,* 271 S.W.3d 424, 430 (Tex.App.-Dallas 2008, no pet.). One of the essential elements of a Section 12.002 claim is that the defendant used a document or record despite knowing that it reflected a fraudulent lien or claim against real property. *See Gordon v. W. Houston Trees, Ltd.,* 352 S.W.3d 32, 46 (Tex.App.-Houston [1st Dist.] 2011, no pet.). Moreover, the Family Code, which provides the legal basis for imposing a child support lien, states that the lien may be filed in a county where "the obligor is believed to own nonexempt real or personal property." TEX. FAM.CODE ANN. § 157.314(a)(1) (West 2008). Thus, Malena had the burden to prove at trial that Lesay knew that the child support lien notice fraudulently misrepresented the

homestead status of the Spring property, and yet she filed it anyway. The fact that Lesay might have filed a lien notice reflecting an incorrect statement about the homestead status, without contemporaneous knowledge of its falsity or reckless disregard for its truth, would not satisfy this essential element of proof. *See Gordon*, 352 S.W.3d at 46; *Aland*, 271 S.W.3d at 430.

The Salomons do not argue that that the evidence at trial conclusively showed that Lesay knew that the child support lien notice reflected an incorrect statement about the homestead status of their property. Rather, they argue that (1) Lesay admitted at trial that she determined for herself the homestead status of the property, even though the homestead status had never been officially adjudicated, and (2) the evidence conclusively showed that the Salomons' property was in fact their homestead, as the jury found with respect to Malena Salomon. Neither of these propositions, even if taken as true, substitutes for the requisite element of knowledge that the lien or claim is fraudulent. *See* TEX. CIV. PRAC. & REM.CODE. ANN. § 12.002(a)(1); *Gordon*, 352 S.W.3d at 46.

Furthermore, the evidence at trial showed that the Salomons had not formally designated the Spring property as their homestead prior to Lesay filing the child support lien notice. Lesay testified based upon her personal investigation that when the lien notice was filed, the Spring property was not designated as homestead in the county records. The Salomons' own evidence similarly showed that they did not designate the Spring property as their homestead with the Harris County Clerk until after Lesay had filed the lien notice. Although the Salomons can benefit from the constitutional homestead exemption without any particular writing, *see, e.g., Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex.

App.-Houston [1st Dist.] 1983, no writ), filing an official designation of a homestead with the county clerk provides prima facie evidence of intent to claim property as a homestead and puts the world on notice to that effect. *See Sanchez v. Telles*, 960 S.W.2d 762, 771 (Tex.App.-El Paso 1997, writ denied); *see also* TEX. PROP.CODE ANN. § 41.005(c) (West 2000) (providing process for voluntarily designating property as a homestead with the county clerk). Thus, the jury could reasonably conclude from the evidence that Lesay, having found no homestead designation in the property records, believed that the Salomons' Spring property was not their homestead and that her lien notice accurately reflected her belief in that regard. Therefore, the jury's finding on the fraudulent lien question does not fall outside the zone of reasonable disagreement, nor does it contradict the great weight and preponderance of the evidence. *See Benavente v. Granger*, 312 S.W.3d 745 (Tex.App.-Houston [1st Dist.] 2009); *City of Keller*, 168 S.W.3d at 827.

We overrule the Salomons' first issue.

## II. Jury instruction on fraudulent lien claim

■ The Salomons argue that the trial court abused its discretion by refusing to submit Malena's proposed instruction to the jury on her fraudulent lien claim. Malena proposed the following question and instruction:

> Did ISABELLE LESAY make, present or use a document or other record with knowledge that the document or other record was a fraudulent lien or claim against real property or an interest in real property with the intent that the document be given the legal effect of evidencing a valid lien or claim against real property or an interest in real property with the intent to cause MALENA SALOMON to ˙ suffer financial injury?

A lien is fraudulent if the person who files it has actual knowledge that the lien was not valid at the time it was filed.

Malena's proposed instruction thus asked whether Lesay made, presented, or used "a fraudulent lien or claim against real property." At the charge conference, the Salomons objected to Lesay's proposed question because it only asked whether Lesay had filed a fraudulent lien, rather than asking whether she had filed a fraudulent lien "or claim." They asserted that the child support lien notice, though it was for a valid debt, reflected a fraudulent "claim" that the Spring property identified by the lien was "non exempt" real property. *See* TEX. FAM.CODE. ANN. § 157.313(a)(9). The trial court, telling the Salomons' counsel that they lacked "a scintilla of evidence to get that question to the jury," refused the Salomons' proposed charge. The actual question and instruction was submitted to the jury as follows:

Did ISABELLE LESAY file the Notice of Child Support Lien fraudulently?

You are instructed that a person files a fraudulent lien if the document is filed with knowledge that the document is fraudulent, with the intent that the record be given the same legal effect as a valid lien, and with the intent to cause another person to suffer (a) physical injury, (b) financial injury, or (c) mental anguish or emotional distress. A lien is fraudulent if the person who files it has actual knowledge that the lien was not valid at the time it was filed. Filing notice of a valid debt is not fraudulent.

Answer "Yes" or "No."

On appeal, the Salomons challenge the jury instruction on two grounds. They first argue that the last statement in the jury instruction, "Filing notice of a valid debt is not fraudulent," was erroneous be- cause Lesay could have a valid child support debt yet still file a lien that fraudulently identifies that certain property as nonexempt. However, this issue was not preserved for appellate review because no objection on that basis was made in the trial court. *See* TEX.R. CIV. P. 274; *Carousel's Creamery, L.L.C v. Marble Slab Creamery, Inc.*, 134 S.W.3d 385, 404–05 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd). Their other argument is that the jury instruction incorrectly referred only to "a fraudulent lien" without reference to a fraudulent "claim," when Malena's cause of action implicated "a fraudulent claim" insofar as Lesay's child support lien notice reflected a "claim" that the Salomons' Spring property was nonexempt. In response, Lesay argues that the question submitted to the jury closely tracked the language of Section 12.002 of the Civil Practice and Remedies Code.

In a jury trial, the trial court "shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277. A valid instruction (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex.2002). The trial court has considerable discretion in deciding whether a proposed instruction is necessary and proper to submit to the jury. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451–52 (Tex.1997). We will not disturb the trial court's decision on which instructions to submit to the jury absent an abuse of discretion. *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 584 (Tex. App.-Houston [1st Dist.] 2007, pet. denied).

If the trial court submits an incorrect jury instruction, we reverse only if the record shows that the given instruction was reasonably calculated to cause, and probably did cause, the rendition of an

improper judgment. *Bed, Bath & Beyond, Inc. v. Urista,* 211 S.W.3d 753, 757 (Tex. 2006); Tex.R.App. P. 44.1(a); *see also* Tex. R.App. P. 61.1(a). "Charge error is generally considered harmful if it relates to a contested, critical issue." *Columbia Rio Grande Healthcare, L.P. v. Hawley,* 284 S.W.3d 851, 856 (Tex.2009). When determining whether an erroneous instruction or definition probably caused an improper judgment, we examine the entire record. *Transcon. Ins. Co. v. Crump,* 330 S.W.3d 211, 225 (Tex.2010). To reverse the judgment on the ground that an improper jury instruction was given, we would have to find, after examining the entire record, that the jury instruction probably did result in an improper judgment. *See Crump,* 330 S.W.3d at 225; *Bed, Bath & Beyond,* 211 S.W.3d at 757; Tex.R.App. P. 44.1(a).

Assuming that the trial court erred by failing to instruct the jury that Lesay could be liable for a fraudulent "claim," on this record, we cannot conclude that Malena would probably have prevailed had her proposed jury instruction been used. As we explained with respect to the Salomons' first issue, the evidence at trial showed that Lesay had filed her lien notice before the Salomons formally designated the Spring property as their homestead. The jury could have reasonably concluded that Lesay, relying upon the absence of any homestead designation in the county records and the Salomons' prolonged absences from the Spring property, had a good faith basis for asserting that the Spring property was nonexempt. *See Sanchez,* 960 S.W.2d at 771. Thus, the Salomons cannot show that the jury charge probably resulted in the rendition of an improper judgment. Accordingly, we hold that there was no reversible error with respect to the omission of language in the jury instruction regarding a fraudulent "claim" by Lesay. Tex.R.App. P. 44.1(a).

We overrule the Salomons' second issue.

## III. Division of homestead

The trial court's final judgment confirmed that the Spring property is Malena's homestead and that Lesay's and Khalaf's claimed interests in that property are invalid. The judgment also purported to negate the Spring property's homestead status solely with respect to Michel's interest in the property, thereby validating Lesay's and Khalaf's claims as against Michel. As a consequence of these rulings, the trial court ultimately decreed that Khalaf owns the Spring property as a joint tenant with Malena.

In their third issue, the Salomons argue under both the Texas Constitution and the Rules of Civil Procedure that the trial court abused its discretion by granting any relief in favor of Lesay and Khalaf. The Salomons contend that the judgment impermissibly gave effect to a constitutionally void lien on homestead property. *See* Tex. Const. art. XVI, § 50. They also object that the specific relief contained in the final judgment was not permitted because it was not supported by the pleadings of any party. *See* Tex.R. Civ. P. 301. The Salomons made these same objections in the trial court, first in their written objections to Lesay's and Khalaf's proposed judgments, and later in their motions for new trial and to modify or clarify the judgment.

Lesay relies upon the Civil Practice and Remedies Code to defend the outcome. She argues that Khalaf is deemed an innocent purchaser without notice and that an owner can recover property seized pursuant to a judicial writ only if the property has not already been sold. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 34.021, .022, .046 (West 2008). Thus because the property was sold, Lesay contends that the Salomons have no means of recovering the

Spring property. Khalaf argues that he prevailed in his suit to quiet title and that the judgment appropriately awarded him Michel's one-half interest in the property since Michel had no pleadings before the court.

## A. Conformity of judgment to the pleadings

■ Before addressing the constitutional aspects of the Salomons' appellate challenge, we first consider the suggestion that the judgment was defective under the Rules of Civil Procedure. *See VanDevender v. Woods,* 222 S.W.3d 430, 432 (Tex. 2007) ("when a case may be decided on a non-constitutional ground, we should rest our decision on that ground and not wade into ancillary constitutional questions"). The Salomons argue that because neither Lesay nor Khalaf specifically requested in their pleadings that Khalaf be declared a joint tenant with Malena Salomon, the inclusion of such relief in the final judgment was not supported by the pleadings.

■ Rule 301 of the Texas Rules of Civil Procedure provides:

The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any jury finding on a question that has no support in the evidence. Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law. Judgment may, in a proper case, be given for or against one or more of several plaintiffs, and for or against one or more of several defendants or intervenors.

A judgment therefore must be supported by the pleadings, and a party may not be granted relief in the absence of pleadings to support such relief. *Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex. 1983); TEX.R. CIV. P. 301. When, as in this case, a special verdict is rendered by the jury, the trial court shall render a judgment that conforms to the special verdict, unless the special verdict is set aside, a new trial is granted, or judgment is rendered notwithstanding the verdict. *See* TEX.R. CIV. P. 300. The judgment must also be framed so as to give all the relief to which the prevailing parties are entitled in law or equity. *See* TEX.R. CIV. P. 301. "A prayer for general relief will support any relief raised by the evidence and consistent with the allegations in the petition." *Khalaf v. Williams,* 814 S.W.2d 854, 858 (Tex. App.-Houston [1st Dist.] 1991, no writ).

■ Lesay's counterclaim sought a declaration of the parties' rights with respect to the homestead status of the Spring property and the validity of her child support lien. Khalaf's counterclaim to quiet title was an action in equity, and as such it sought an equitable remedy. *See, e.g., Teledyne Isotopes, Inc. v. Bravenec,* 640 S.W.2d 387, 390 (Tex.App.-Houston [1st Dist.] 1982, writ ref'd n.r.e.). Both Lesay and Khalaf pleaded generally for "such other and further relief" as to which they may have been entitled. Although no party's pleadings requested the particular relief reflected in the final judgment—a declaration that Malena owns a one-half homestead interest in the Spring property, that Khalaf acquired Michel's one-half non-homestead interest, and that Khalaf and Malena are tenants in common—the judgment does not thereby fail to "conform" to the pleadings as required by Rule 301. The trial judge is not constrained to enter

judgment only in a form specified by one of the parties, because in addition to conforming to the pleadings, the judgment must also reflect a correct application of the law to determine the effect of the jury's verdict. *Cf. Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts."). Accordingly, the trial court is responsible for independently evaluating "the nature of the case proved and the verdict, if any," correctly applying the law, and entering a final judgment that "conform[s] to the pleadings." TEX.R. CIV. P. 301.

In light of these principles, to the extent there is any legal defect in the trial court's final judgment, it is not a failure by the trial court under Rule 301 to faithfully memorialize its determination of the legal effect of the jury's verdict, in light of the pleadings on file and the evidence adduced at trial. Viewing the pleadings "as a whole," *Khalaf,* 814 S.W.2d at 858, we conclude that the relief ordered by the trial court corresponds to the allegations in the parties' pleadings (a dispute about homestead rights and property ownership), the evidence adduced at trial, and the jury's special verdict.

### B. Constitutional homestead exemption

■ We now address the Salomons' argument that the relief granted by the trial court was unconstitutional. The Texas Constitution provides that homestead property is exempt from forced sale to pay debts, except for certain specified categories of debts. *See* TEX. CONST. art. XVI, § 50. The constitutionally allowed exceptions to the homestead exemption include debts for: (1) purchase money of the property; (2) taxes due on the property; (3) owelty of partition by court order or written agreement; (4) refinance of a lien against the property; (5) certain work and

material to improve, renovate, or repair the property; (6) certain extensions of credit; (7) reverse mortgages; and (8) conversion and refinance of a personal property lien secured by a manufactured home to a lien on real property. *See* TEX. CONST. art. XVI, § 50(a). "No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described" in the constitution as allowable against the homestead. *See* TEX. CONST. art. XVI, § 50(c). The words not "ever be valid" in article XVI, section 50(c) mean "void." *Inge v. Cain,* 65 Tex. 75, 79 (1885).

■ The purpose of the homestead exemption is to provide a secure home for the family against creditors. *See Jones v. Goff,* 63 Tex. 248, 254 (1885); *Ball, Hutchings & Co. v. Lowell,* 56 Tex. 579, 583 (1882); *see also Franklin v. Coffee,* 18 Tex. 413, 415–16 (1857). This protection from creditors advances the stability and the welfare of the State. *See Andrews v. Sec. Nat'l Bank of Wichita Falls,* 121 Tex. 409, 50 S.W.2d 253, 256 (1932). The constitutional homestead exemption is liberally construed to further its purposes. *Inwood N. Homewoners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex.1987); *Andrews,* 50 S.W.2d at 256.

■ "It is well settled in Texas that in order to establish homestead rights, there must be proof of concurrence of usage and intent on the part of the owner to claim the land as a homestead." *Dodd,* 670 S.W.2d at 649. "No specific writing is needed to claim a homestead. By the mere act of using and enjoying a property as a home, a person qualifies for the protections mandated by the Texas Constitution." *Id.; accord Denmon v. Atlas Leasing, L.L.C.,* 285 S.W.3d 591, 595 (Tex.App.-Dallas 2009, no pet.). Once a property has been dedicated as a homestead, it can lose such designation only by abandonment,

alienation, or death. *Denmon*, 285 S.W.3d at 595; *Intertex, Inc. v. Kneisley*, 837 S.W.2d 136, 138 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

 The forced sale of a homestead property for a debt not specifically allowed by the constitution is void, and it confers upon the purchaser no rights in the property. *See Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex.1992); *Cline v. Niblo*, 117 Tex. 474, 8 S.W.2d 633, 639 (1928); *Toler v. Fertitta*, 67 S.W.2d 229, 230–31 (Tex. Comm'n App.1934, judgm't adopted); *Hayes v. Taylor*, 17 Tex.Civ.App. 449, 43 S.W. 314, 314–15 (Tex.Civ.App.-Fort Worth 1897, no writ). Even if real property has been sold pursuant to a foreclosed lien, this fact does not preclude a person claiming homestead status from litigating that question in a collateral proceeding, so long as the existence of the homestead was not previously adjudicated. *Cline*, 8 S.W.2d at 638; *Tate v. McGraw*, 70 S.W.2d 467, 469 (Tex.Civ.App.-Dallas 1934, no writ). "A judgment ordering a sale is vulnerable to collateral impeachment on the theory that the property was a homestead not only when this fact is revealed by the record but also when the record is silent on the issue." *Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24, 27 (Tex.App.-Dallas 1985, writ ref'd n.r.e.).

 Historically, the constitutional homestead exemption extended its protection only to the family, although since a 1973 amendment, its protection also extends to a "single adult person." *See* Tex. Const. art. XVI § 50(a); *Moray Corp. v. Griggs*, 713 S.W.2d 753, 754 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd); *see also* Tex. Prop.Code Ann. § 41.002 (defining homestead for families and single adult persons). When a married couple asserts homestead status, the homestead exemption may attach either to community property or to the separate property of either

spouse. *Crowder v. Union Nat'l Bank of Houston*, 114 Tex. 34, 261 S.W. 375, 377 (1924); *Wheatley v. Griffin*, 60 Tex. 209, 211 (1883); *Lowell*, 56 Tex. at 583; *Denmon*, 285 S.W.3d at 595. However, a family is not entitled to two homesteads at the same time. *See Silvers v. Welch*, 127 Tex. 58, 91 S.W.2d 686, 687 (1936) (citing Tex. Const. art. XVI, § 51); *Achilles v. Willis*, 81 Tex. 169, 16 S.W. 746, 746 (1891). Also, because the constitutional homestead exemption is given to the family, not to either spouse individually, the wife cannot have one homestead and the husband another. *Crowder*, 261 S.W. at 377; *Marler v. Handy*, 88 Tex. 421, 31 S.W. 636, 639 (1895); *Slavin v. Wheeler*, 61 Tex. 654, 659 (1884). It is possible for one spouse to abandon the homestead and his corresponding rights while the other spouse retains her homestead rights. *See, e.g., Fairfield Fin. Group, Inc. v. Synnott*, 300 S.W.3d 316, 321 (Tex.App.-Austin 2009, no pet.). The party asserting abandonment must plead and prove it by competent evidence. *Sullivan v. Barnett*, 471 S.W.2d 39, 43 (Tex.1971). Thus, so long as real property is a family homestead by virtue of one spouse's intention and use, that property is protected by the homestead exemption, unless abandonment is pleaded and proved. *See Denmon*, 285 S.W.3d at 596 (concluding that property occupied as homestead by one spouse was family homestead even though other spouse lived apart).

The trial court's final judgment declared that Malena has a homestead interest in the property, and that her husband, Michel, has a non-homestead interest in the property. However, if Malena has a homestead interest in the property, as the jury found, then that property must be a family homestead, because as a married person with a living spouse, she cannot have the only other kind of homestead,

that of a "single adult person." *See* TEX. CONST. art. XVI, § 50; *Denmon,* 285 S.W.3d at 596. Being Malena's husband, Michel presumptively possesses a homestead interest in the property, and they together enjoy the benefits of the family homestead exemption. *See Denmon,* 285 S.W.3d at 596. Lesay and Khalaf did not plead abandonment of the homestead by Michel. *See Fairfield Fin. Group,* 300 S.W.3d at 321; *Sullivan,* 471 S.W.2d at 43. In the absence of a pleaded and proven abandonment by one spouse, the treatment of the same piece of property as a homestead with respect to one spouse but as non-homestead property with respect to the other spouse is legally impossible, because the homestead exemption belongs to the family, not to the husband or wife individually. *See Crowder,* 261 S.W. at 377; *Marler,* 31 S.W. at 639; *Denmon,* 285 S.W.3d at 596.

Given that the property is the homestead of the Salomon family, it is exempt from liens and forced sales, except those specifically allowed by the constitution. *See* TEX. CONST. art. XVI § 50; *Heggen,* 836 S.W.2d at 148. Yet, by declaring Lesay's lien to be valid against Michel's property interest—and by further declaring that Khalaf had acquired Michel's one-half undivided interest in the property as tenant in common with Malena—the trial court's final judgment gave effect to an unconstitutional lien and forced sale of homestead property. Lesay's lien on the Salomons' residential property for child support arrearages does not fall under any of the constitutional categories of debt for which a lien may attach to homestead property. *See* TEX. CONST. art. XVI, § 50(a); *Eggemeyer v. Eggemeyer,* 623 S.W.2d 462, 466 (Tex.App.-Waco 1981, no writ). Therefore, the lien is void. *See Heggen,* 836 S.W.2d at 148; *Eggemeyer,* 623 S.W.2d at 466. Because the lien is void, the constable's sale foreclosing on the lien and transferring title to Khalaf is also void and subject to challenge in a collateral proceeding, like the one the Salomons initiated. *See Cline,* 8 S.W.2d at 638; *Curtis Sharp,* 701 S.W.2d at 27.

**C. Statutory limits for wrongful execution**

■■■ Lesay argues that the Civil Practice & Remedies Code allows a person to recover property seized through a writ of execution only when the property has not already been sold. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 34.021, .022. Section 34.021 of the Code provides:

> A person is entitled to recover his property that has been seized through execution of a writ issued by a court if the judgment on which execution is issued is reversed or set aside and the property has not been sold at execution.

*Id.* § 34.021. Lesay argues that because the Salomons' property has been sold to Khalaf, the Code prevents the Salomons from reversing the sale after the fact. Lesay contends that the Salomons could recover, at most, money damages for their lost equity under Section 34.022, but the Salomons proved no monetary damages at trial and therefore cannot obtain this recovery either. *See id.* § 34.022.

■■■ We assume, without deciding, that Lesay's interpretation and application of the relevant statutes is correct. Even so, Lesay's proposed application of the Civil Practice and Remedies Code would contravene the recognized constitutional right of homestead claimants to resort to collateral proceedings to void unconstitutional liens and forced sales of their homestead property. *See Cline,* 8 S.W.2d at 638; *Curtis Sharp,* 701 S.W.2d at 27. We must presume the constitutionality of an act of the Legislature. *Texas Pub. Bldg. Auth. v. Mattox,* 686 S.W.2d 924, 927 (Tex. 1985). Nonetheless, when the proposed

application of a state statute would abridge rights enshrined the Texas Constitution, the statute must yield. *See Weiner v. Wasson*, 900 S.W.2d 316, 318–19 (Tex. 1995). Because the Texas Constitution must take precedence over state statutes, we refuse Lesay's proposed application of the Civil Practice and Remedies Code. *See Tate*, 70 S.W.2d at 468 (construing statute allowing good title to vest in purchaser of foreclosed property to not apply to sales consummated in violation of homestead exemption).

In light of the foregoing analysis, we conclude that the trial court erroneously declared and ordered in the final judgment that (1) the property is not the homestead of Michel Salomon and is not exempt from forced sale, (2) Michel Salomon owns a non-homestead interest in the property, (3) Lesay's child support lien is valid against Michel Salomon's property interest, and Lesay shall not release the lien, (4) Khalaf's deed is not void and is valid, and Khalaf shall not release liens and claims by reason of the deed, and (5) Khalaf is entitled to Michel Salomon's interest in the property as a joint tenant with Malena Salomon. These declarations and orders reflect a misapplication of the law to the jury's determination that the property is the homestead of Malena Salomon, and therefore the trial court erred by granting relief to Lesay and Khalaf that is forbidden by the Texas Constitution. *See Walker*, 827 S.W.2d at 840; Tex.R. Civ. P. 301.

We sustain the Salomons' third issue.

## IV. "Death penalty" sanctions

■ In their fourth and final issue, the Salomons argue that the trial court abused its discretion when it struck Michel's pleadings for failure to appear at court-ordered depositions. Specifically, the Salomons argue that the sanction was unjust because there was no nexus between Michel's conduct and the sanction, less strin-gent sanctions were available to rectify the allegedly disobedient conduct, and Michel offered to participate in and pay for a deposition by telephone. Lesay argues that given Michel's repeated refusals to appear for court-ordered depositions, the trial court did not abuse its discretion in striking his pleadings, and that the complications of conducting a telephonic deposition made that option impracticable. Khalaf makes similar arguments, asserting that Michel had ample opportunity to appear for deposition but failed to do so.

The legitimate purposes of discovery sanctions are: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992). The sanction imposed by the court must be "just." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991); Tex.R. Civ. P. 215.2(b). "Two factors mark the bounds of the trial court's discretion in order for sanctions to be just: first, a direct relationship between the offensive conduct and the sanction imposed must exist; and second, the sanction imposed must not be excessive." *Chrysler*, 841 S.W.2d at 849.

Rule 215.2 of the Texas Rules of Civil Procedure allows a trial court to sanction a party for failure to comply with a discovery order or request. *See* Tex.R. Civ. P. 215.2; *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex.2004). Among the sanctions available under Rule 215.2 are orders "striking out pleadings or parts thereof," "dismissing with or without prejudice the actions or proceedings or any part thereof," and "rendering a judgment by default against the disobedient party." Tex.R. Civ. P. 215.2(b)(5). These sanctions are often referred to as "death penalty" sanctions. *See generally Cire*, 134 S.W.3d at

840–41. "When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery." *TransAmerican*, 811 S.W.2d at 918.

Before imposing death penalty sanctions, the trial court ordinarily must consider and test lesser sanctions that would promote compliance with the rules. *Cire*, 134 S.W.3d at 842. That said, the trial court may impose death penalty sanctions as a first resort when the offending party demonstrates "egregious conduct and blatant disregard for the discovery process." *Id.* Moreover, for death penalty sanctions to be just, the trial court "must determine that 'a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit.'" *GTE Comm. Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex.1993) (quoting *TransAmerican*, 811 S.W.2d at 918).

Thirty-two months passed between the date that the trial court first ordered Michel to appear for deposition and the date that the trial court struck his pleadings. Fourteen months before striking Michel's pleadings, the trial court imposed a $1,000 fine for his prior failures to comply with court orders that he appear for deposition. Michel's counsel was warned in open court that the pleadings were subject to being struck. Thus, the court allowed for ample opportunity to test whether the sanction of a $1,000 fine and warning would compel Michel to appear for the ordered depositions. *Cf. In re Malone*, 336 S.W.3d 860, 865 (Tex.App.-Beaumont 2011, pet. denied) (affirming death penalty sanctions when litigant refused to answer questions at depositions despite court's multiple orders and warnings that his pleadings were subject to being struck); *Hernandez v. Mid–*

*Loop, Inc.*, 170 S.W.3d 138, 144 (Tex.App.-San Antonio 2005, no pet.) (same, when plaintiff was uncooperative and belligerent in depositions).

Michel points out that he offered on several occasions to appear by telephone and pay for the related costs, but the trial court was not required to acquiesce to Michel's proposal that his deposition be taken by telephone. Although depositions by telephone are permitted, *see* Tex.R. Civ. P. 199.1(b) & 201.1(g), it is within the trial court's discretion to disallow them. *See* Tex.R. Civ. P. 192.4 (permitting trial court to limit discovery methods that are unreasonably cumulative, inconvenient, burdensome, or expensive).

Given Michel's repeated failures, without valid excuse, to appear for court-ordered depositions, the trial court could have reasonably concluded that Michel's pleadings lacked merit when it struck them. *See GTE*, 856 S.W.2d at 730; *Malone*, 336 S.W.3d at 865; *Hernandez*, 170 S.W.3d at 144. Given also that the trial court allowed Michel ample opportunity to appear for deposition after testing a lesser sanction, the trial court had the discretion to impose death penalty sanctions. *See Cire*, 134 S.W.3d at 842. On this record, we conclude that there was a direct relationship between the death penalty sanctions and Michel's refusal to be deposed, and that the sanctions were not excessive. *See Chrysler*, 841 S.W.2d at 849. The order striking Michel's pleadings was therefore just, and the trial court did not abuse its discretion. Tex.R. Civ. P. 215.2(b).

We overrule the Salomons' fourth issue.

## Conclusion

Because the trial court's judgment was internally inconsistent with respect to the Salomons' family homestead, we reverse those portions of the judgment pertaining

to Michel's pleadings that awarded relief inconsistent with Malena's continuing homestead interest. The Salomons have also asked that we award them statutory damages, costs of court, and attorney's fees, but they have provided no legal argument to support that request. We therefore deny the Salomons' requests for additional relief, without prejudice to those arguments being presented to the trial court on remand. The case is remanded for such further proceedings as may be necessary with respect to such requests and the entry of a final judgment consistent with this opinion.