Opinion issued October 29, 2013



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-12-00672-CV

————————————

SAFECO SURETY AND C.A. WALKER CONSTRUCTION, Appellants

V.

J.P. SOUTHWEST CONCRETE, INC., Appellee

On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2005-70198

MEMORANDUM OPINION

This is the second appeal in this dispute between C.A. Walker Construction

and Safeco Surety (collectively "Walker") and J.P. Southwest Concrete, Inc.

("J.P."). *See C.A. Walker Constr. Co. v. J.P. Sw. Concrete, Inc.*, No. 01-07-00904-

CV, 2009 WL 884754 (Tex. App.—Houston [1st Dist.] Apr. 2, 2009, no pet.) (mem. op.). In the first appeal, we remanded for a new trial on damages. Walker now appeals from the trial court's judgment on remand, which awarded J.P. $74,193.90 in actual damages, as well as attorney's fees and pre- and post-judgment interest. Walker contends that the trial court erred in allowing J.P. to present new damages theories and evidence that were precluded by our 2009 opinion in this case. It also challenges the trial court's findings of fact and conclusions of law and contends that the evidence is legally and factually insufficient to support the judgment. We modify the trial court's judgment to exclude the award of retainage in the amount of $7,105.28, and we affirm the judgment as modified.

## Background

### *2007 Trial and First Appeal*

Our first opinion sets forth in detail the factual background that gave rise to this dispute. Walker was the general contractor on a Spring Branch Independent School District construction project. J.P. was a subcontractor. In their written contract, Walker agreed to pay J.P. $243,000 to do all the concrete work for the project. The contract price for J.P.'s work was later revised via change orders to $274,149.

2

When J.P. began work in September 2004, it encountered severe subsoil obstructions that prevented it from drilling pier holes. Walker instructed J.P. to prepare and submit written change orders to cover the removal of the obstructions. J.P. submitted a number of written change orders, but Walker only approved some of them.

The contract provided that J.P. would be paid in monthly installments as the work progressed. Accordingly, as work on the project progressed, J.P. submitted applications for payment along with supporting documentation. As of December 2004, J.P. had been paid $57,349.25. In January 2005, J.P. requested further payment of $79,796. Later, J.P. sought payment of $17,099 for work done in February 2005. On March 16, 2005, Walker paid J.P. $84,756.35. In exchange for that payment, J.P.'s president, Jeff Pantle, executed a "Subcontractor Affidavit of Payment and Partial Release of Lien" on behalf of J.P. The release states that the payment received on March 16, 2005 "constitutes full payment for the work performed to date and any and all change orders or claims for additional work performed." The release further provides:

> Subcontractor waives, releases, relinquishes and discharges all known and unknown causes of action, including, but not limited to those arising out of contract, by statute, in tort or otherwise, and waives, releases, relinquishes and agrees to discharge any suits, debts, accounts, bonds, contracts, promises, damages, liens, encumbrances, judgments, claims and demands whatsoever, in law or equity, which

3

are against the Contractor . . . that the Subcontractor now has or might hereinafter obtain that relates directly or indirectly to the aforesaid relationship, Contract, and/or Project.

J.P.'s work on the project continued after it entered into the release. Walker told J.P. that subsoil debris and obstructions had been removed and requested it continue drilling pier holes. J.P. went to the site, bringing with it another drilling subcontractor, but was unable to perform the work due to subsoil debris and obstructions. J.P.'s last day at the site was March 22, 2005. Walker acknowledged that it owed J.P. for work that was done after March 16, but contended the amount owed was only $2,848.

For several months, J.P. attempted to collect payment from Walker. J.P. eventually sued for breach of contract, and Walker counterclaimed. In its pre-trial disclosures and at the 2007 bench trial, J.P. asserted that it was entitled to recover the following damages: $19,501 for unpaid work and $58,000 for lost profits, for a total of $77,501.

However, in its motion for entry of judgment filed several weeks after trial, J.P. sought new and different damages. The motion asserted J.P. was entitled to recover damages in the amount of $74,059.52, consisting of the following:

- $17,099 for unpaid contract work in February 2005;

- $21,748.52 for unpaid contract work in March 2005;

4

- $8,389 for retainage;

- $26,823 for extra work completed for unsigned change orders; and

- $3,600 for attorney's fees J.P. paid Transit Mix, another subcontractor on the project, after Transit Mix sued J.P. to recover payment for supplies Transit Mix provided for the project.

In addition, instead of the $58,000 originally sought for lost profits, J.P. requested a lost profits award of $26,499.05. The trial court rendered judgment, awarding J.P. $47,000 in damages, but did not indicate how it reached that figure. It entered no findings of fact or conclusions of law.

In Walker's first appeal, we reversed the trial court's damages award, but otherwise affirmed the judgment. We held that J.P. released all claims for any amounts due for work performed before March 16, 2005 by signing the March 16, 2005 release and that "any lost profits incurred before March 16, 2005 are not properly included in the award." *C.A. Walker Constr. Co.*, 2009 WL 884754, at *5–6. With respect to lost profits, we concluded that J.P. failed to present "objective facts, figures, or data from which the amount of lost profits can be ascertained" and that therefore "the evidence [was] factually insufficient to support an award of lost profits." *Id.* at *6. In addition, we held that J.P. was not entitled to "any damages for a suit filed against J.P. by Transit Mix for services or materials, or the attorney's fees incurred by Transit Mix and paid by J.P," because

5

the plain language of the parties' contract excused Walker from paying any damages for a suit filed against J.P. *Id.* at *7. Finally, we held that Texas Rule of Civil Procedure 193.6 precluded J.P.'s recovery of damages that had not been disclosed before trial. TEX. R. CIV. P. 193.6, 194.2(d); *C.A. Walker Constr. Co.*, 2009 WL 884754, at *7. We concluded that the trial court erred in awarding $47,000 in damages, "because the figure could not have been reached without taking into consideration amounts that were disclaimed by the release, were for lost profits, were for Transit Mix's lawsuit, or were not properly disclosed before post trial." *C.A. Walker Constr. Co.*, 2009 WL 884754, at *8. Accordingly, we remanded the case to the trial court "for the limited purpose of conducting a new trial on the issue of damages." *Id.* at *8.

### New Trial on Damages and Second Appeal

On remand, Walker moved for summary judgment, asking the trial court to enter judgment awarding J.P. $2,848 in damages. Walker contended this was the only amount supported by evidence that had not been rejected by this Court's opinion. The trial court denied the motion.

Before the retrial, J.P. timely supplemented its responses to Walker's requests for disclosure and disclosed an expert witness. The supplemental responses reflected J.P.'s intent to seek damages in the amount of $38,000 for

6

unpaid labor, services, goods, and materials for work that J.P. performed between March 16, 2005 and March 22, 2005, $10,355 for retainage, and $48,355 for lost profits. J.P. also timely designated Lane Parish as a testifying expert on lost profits, produced Parish's report, served new discovery requests on Walker, and sought an additional deposition. Walker objected to the supplementation and new discovery on the grounds that they were precluded by our opinion, but the trial court permitted them. Walker propounded no discovery and did not seek to depose Parish.

The trial court held a bench trial on damages. At the trial, Walker objected to the admission of new evidence of damages disclosed on remand, but the trial court overruled Walker's objections.

At trial, Pantle testified about the work J.P. performed for Walker between March 16, 2005 and March 22, 2005. He testified about the number of employees that were on site on each day, the work they performed, the tools, materials, and equipment that were used each day, and the cost for each. He testified that the total amount due for work performed on those dates was $30,422.23.

Pantle also testified that J.P. was seeking $7,105.28 in damages for retainage. Under the parties' contract, Walker would pay J.P. progress payments equal to 95% of the value of J.P.'s work but retain the other five percent as

7

retainage until the end of the term of the contract. Pantle testified that J.P. was owed the retainage for work performed through March 16, $7,105.28.

J.P.'s expert, Lane Parish, testified that J.P. was entitled to lost profits in the amount of $36,642.39. Parish testified that he used information from the start date to the end date of the job to calculate J.P.'s "job profit percentage." To determine that percentage, he subtracted the cost of the work performed through March 16 from the total amount J.P. was paid for that work plus five percent retainage, and then divided that gross profit by the total amount paid plus five percent retainage. This yielded a job profit percentage of 27.75%. Parish then applied this percentage to the outstanding total contract amount that was reflected on the March 16, 2005 release, $132,043.40, and this yielded a lost profit figure of $36,642.39.

The trial court signed a final judgment awarding damages to J.P. in the amount of $74,193.90, carrying forward the award of attorney's fees awarded in the first judgment and awarding fees for the new trial and conditional appellate fees, and awarding pre- and post-judgment interest. The trial court also entered findings of fact and conclusions of law. According to the trial court's findings of fact, the $74,193.90 damages award is comprised of $30,442.23 for unpaid labor, goods, services, and materials, $7,105.28 for retainage, and $36,646.39 in lost profits.

8

**Law of the Case and Scope of Remand**

In its first issue, Walker argues that our first opinion and the law of the case doctrine precluded the trial court's consideration of new damages theories and evidence that had not been disclosed before the first trial on the merits.

**A. Applicable Law**

When we remand a cause to the trial court for a new trial, the remand is generally unlimited in scope and the cause is reopened in its entirety. *See Cedillo v. Gaitan*, 981 S.W.2d 388, 390 (Tex. App.—San Antonio 1998, no pet.). We may limit our remand to include only certain issues, as stated in the mandate. *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.— Dallas 2011, no pet.) ("When an appellate court remands a case with specific instructions, the trial court is limited to complying with the instructions and cannot re-litigate issues controverted at the former trial."). The scope of the remand is determined by referring to both the appellate opinion and to the mandate itself. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) (in interpreting mandate of appellate court, "courts should look not only to the mandate itself, but also to the opinion of the court").

Under the law of the case doctrine, "questions of law decided on appeal . . . will govern the case throughout its subsequent stages" and therefore "a court of

appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case." *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003); *Hudson*, 711 S.W.2d at 630. "By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency." *Briscoe*, 102 S.W.3d at 716 (quoting *Hudson*, 711 S.W.2d at 630). The law of the case applies only to questions of law and does not apply to questions of fact. *Hudson*, 711 S.W.2d at 630.

## B. Analysis

Our first opinion stated that we were remanding the case "for the limited purpose of conducting a new trial on the issue of damages." *C.A. Walker Constr. Co.*, 2009 WL 884754, at *8. Our mandate stated that the cause was remanded "for the limited purpose of conducting a new trial on the issue of the amount of the amount [sic] of damages." We otherwise affirmed the judgment of the trial court. Walker argues that the trial court exceeded the scope of the remand in three ways. First, Walker argues that our original opinion precluded J.P. from introducing evidence of damages that had not been disclosed before the first trial. Second, Walker argues that our holding that the release bars J.P. from recovering damages for work performed before March 16, 2005 also bars J.P. from recovering an award of retainage attributable to work performed during that period of time. Third,

10

Walker argues that the trial court impermissibly entered findings of fact and conclusions of law regarding matters beyond the limited scope of the remand. We address these issues in turn.

### 1. Does Rule 193.6 preclude J.P. from seeking damages in amounts that had not been disclosed before the first trial?

Walker urges that this Court's holding that Rule 193.6 precluded J.P. from recovering damages not disclosed before the first trial became the "law of the case," and, therefore, J.P. was limited on remand to recovering only the amount of damages disclosed before the first trial. We disagree. When a new trial is ordered, the case is reopened in its entirety except to the extent that any limiting instructions are provided. *See Hudson*, 711 S.W.2d at 630; *Manon v. Solis*, 142 S.W.3d 380, 386 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Cedillo*, 981 S.W.2d at 390. Here, the new trial was limited to the issue of damages, but it was not otherwise limited, and J.P. was therefore not precluded, in the trial court's discretion, from amending its disclosures or seeking additional discovery on remand. *See Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (scope of discovery is within the trial court's discretion); *Hudson*, 711 S.W.2d at 630; *Manon*, 142 S.W.3d at 386; *Cedillo*, 981 S.W.2d at 390.

Walker argues that "[t]he punitive impact of the exclusionary mandate set forth in rule 193.6 would be eviscerated" if parties are permitted to introduce new

evidence after remand for a new trial. However, on remand for a new trial, the case is again in a pre-trial posture. And as we explained in our previous opinion, the purpose of Rule 193.6 "is to prevent trial by ambush" by requiring a party to "make, amend, or supplement a discovery response in a timely manner." *C.A. Walker Constr. Co.*, 2009 WL 884754, at *7 (quoting *Harris Cnty. v. Inter Nos, Ltd.*, 199 S.W.3d 363, 367 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Walker does not argue that J.P. failed to disclose its damage model before the retrial. Accordingly, J.P. was not precluded by Rule 193.6 from adducing on remand damages evidence that had not been disclosed before the first trial.

We overrule this subpart of Walker's first issue.

## 2. Does the release preclude J.P.'s recovery of the retainage award?

Walker next contends that our holding that the release bars J.P.'s recovery for amounts it is owed on account of pre-March 16, 2005 work is the law of the case, and it bars J.P. from recovering the retainage due on J.P.'s pre-March 16 work. *See Hudson*, 711 S.W.2d at 630. We agree. In the first appeal, we concluded that "by signing the release, J.P. acknowledged it was fully paid for all work it had performed as of March 16, 2005." *C.A. Walker Constr. Co.*, 2009 WL 884754, at *5. Accordingly, J.P. cannot recover for any amounts attributable to work performed as of March 16, 2005.

12

Walker argues that the $7,105.28 retainage award is attributable to work performed before March 16, 2005, and it is therefore unrecoverable. The record demonstrates that the amount the trial court awarded for retainage, $7,105.28, is five percent of $142,105.60, which is the amount J.P. had been paid as of March 16, 2005.

J.P. nevertheless contends it is not barred from recovering this retainage, because J.P. was not entitled to collect it until Walker made the final payment due under the contract. Accordingly, J.P. argues that its right to receive the retainage had not arisen as of March 16, 2005, and therefore the March 16, 2005 release could not operate as a release of the retainage.

The March 16, 2005 release is broad. It states that the payment received on that date "constitutes full payment for the work performed to date and any and all change orders or claims for additional work performed." It also states that J.P. waived, released, relinquished, and discharged all debts, claims and demands "*whatsoever*, in law or equity, which are against [Walker] . . . that [J.P.] *now has or might hereinafter obtain* that relates directly or indirectly to the abovesaid relationship, Contract, and/or Project." (Emphasis added). It does not expressly carve out unpaid retainage, and it does expressly release even those claims that would arise in the future, provided they related to pre-March 16 work. The plain

13

language of the release thus bars recovery of the retainage award. And we have already held that "by signing the release, J.P. acknowledged it was fully paid for all work it had performed as of March 16, 2005." *Id.* at \*5. Accordingly, we hold that the trial court erred in awarding J.P. the five percent retainage for work performed on or before March 16. *See Briscoe*, 102 S.W.3d at 716 (court of appeals is bound by its initial decision if there is a subsequent appeal in the same case); *see also Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000) (broad release releases all claims pertaining to subject matter).

We sustain Walker's first issue with respect to the $7,105.28 award of retainage.

### 3. Findings of Fact and Conclusions of Law

Walker complains that the trial court entered findings of fact and conclusions of law regarding matters outside the scope of our remand. Specifically, Walker complains that the trial court entered findings and conclusions related to liability, and it did not limit its findings and conclusions to the issue of damages. But we cannot ascertain, and Walker does not explain, how, if at all,

14

these findings and conclusions caused the rendition of an improper judgment.[*] *See* TEX. R. APP. P. 44.1(a); *McWhorter v. Sheller*, 993 S.W.2d 781, 786 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (overruling issue regarding alleged errors in findings of fact and conclusions of law where party did not explain how alleged errors caused the rendition of an improper judgment).

We overrule this subpart of Walker's first issue.

## Factual and Legal Sufficiency

In its second issue, Walker contends that the evidence is legally and factually insufficient to support the trial court's judgment, findings of fact, and conclusions of law.

### A. Standard of Review

In an appeal from a bench trial, we review a trial court's conclusions of law de novo. *Zenner v. Lone Star Striping & Paving*, L.L.C., 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *BMC Software Belgium,*

---

[*] To the extent that Walker is complaining here about the trial court's award to J.P. of attorney's fees for the first appeal in the second judgment, we note that in the first appeal, in addition to remanding the cause for a new trial on damages, this Court affirmed the trial court's take-nothing judgment against Walker as well as the remainder of the judgment, which held Walker liable for breach of contract. *C.A. Walker Constr. Co. v. J.P. Sw. Concrete, Inc.*, No. 01-07-00904-CV, 2009 WL 884754, at *8 (Tex. App.—Houston [1st Dist.] Apr. 2, 2009, no pet.) (mem. op.). Under these circumstances, the trial court did not abuse its discretion in awarding attorney's fees for the first appeal to J.P. *See Weaver v. Jamar*, 383 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (award of attorney's fees for breach of contract is reviewed for abuse of discretion).

*N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). We will uphold the conclusions on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.* at 314–15. A trial court's conclusions of law may not be challenged for factual sufficiency of the evidence, but we may review the legal conclusions drawn from the facts to determine their correctness. *Id.* at 314.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Nguyen v. Yovan*, 317 S.W.3d 261, 269–70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining whether sufficient evidence exists to support an answer to a jury question. *Catalina*, 881 S.W.2d at 297; *Nguyen*, 317 S.W.3d at 270.

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit evidence favoring the findings if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 822. Although we consider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we

16

may not disregard evidence that allows only one inference. *Id.* at 822.

In reviewing a factual sufficiency issue, we consider all the evidence supporting and contradicting the finding. *Plas—Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 312 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd by agr.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

The trial court, as finder of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Salomon v. Lesay*, 369 S.W.3d 540, 549 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The factfinder may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Salomon*, 369 S.W.3d at 549. We may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

**B. Analysis**

In its second issue, Walker argues that the evidence presented at the new

trial on damages was legally and factually insufficient to support the judgment. First, Walker argues that the trial court erroneously admitted Exhibit 33, a compilation of J.P.'s business records supporting its claim for damages for unpaid work and for lost profits, and that, without Exhibit 33, insufficient evidence supports the award of $30,442.23 for unpaid labor, goods, services, and materials and the award of $36,646.39 for lost profits. Walker next argues that Parish's lost profits calculation was impermissibly based on work performed and amounts paid for work performed before March 16, 2005 and was based on unreliable evidence. Walker also argues that the trial court abused its discretion in considering testimony by Pantle that contradicted his testimony in the 2007 trial. Finally, Walker contends that the trial court abused its discretion in admitting testimony on attorney's fees that had not been disclosed before the new trial on damages. We address each contention in turn.

## 1. Exhibit 33

Walker asserts that the trial court erred in admitting Exhibit 33, a compilation of J.P.'s records reflecting the costs J.P. incurred on the project. Exhibit 33 was admitted as a business record and sponsored by J.P.'s president, Pantle, who testified that the documents within Exhibit 33 supported J.P.'s claim for unpaid work. Relying on Texas Rule of Civil Procedure 193.6, Walker argues

that Exhibit 33 should have been excluded, because it was not timely disclosed. J.P. agreed that the documents that made up Exhibit 33 were not produced to Walker before trial, but argued that Walker knew that the documents existed, were being relied upon by J.P.'s lost profits expert, and were available for review at J.P.'s counsel's office if Walker had asked to review them.

A party's failure to provide complete responses to discovery results in automatic exclusion of the evidence, unless the trial court finds good cause or lack of unfair surprise or prejudice. TEX. R. CIV. P. 193.6; *see Dyer v. Cotton*, 333 S.W.3d 703, 717 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Norfolk S. Ry. Co. v. Bailey*, 92 S.W.3d 577, 580–81 (Tex. App.—Austin 2002, no pet.). The burden of establishing good cause, lack of unfair surprise, or lack of unfair prejudice is on the party seeking to introduce the evidence or call the witness. TEX. R. CIV. P. 193.6(b); *Dyer*, 333 S.W.3d at 717. The trial court has discretion in determining whether good cause or lack of unfair surprise exists. TEX. R. CIV. P. 193.6(b); *Dyer*, 333 S.W.3d at 717.

Here, Walker contends that pre-trial disclosure of the documents in Exhibit 33 was required by Rule 194.2(f)(4)(A). That rule required J.P. to disclose "all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the

19

expert's testimony." TEX. R. CIV. P. 194.2(f)(4)(A). Parish, J.P.'s expert, relied upon the documents in Exhibit 33. Indeed, Parish included these documents as exhibits to his report. His report, which was timely disclosed to Walker, makes clear that Parish relied on the documents and that the documents were supposed to be attached to Parish's report as exhibits. Walker argues for exclusion on the basis that it did not receive the exhibits to Parish's report. But the information disclosed by J.P. alerted Walker of the existence of the documents, the fact that they were relied upon by Parish, and the fact that they should have been attached to Parish's report, and Walker nevertheless failed to notify J.P. that, in fact, the documents were not attached as exhibits to Parish's report. On this record, we hold that the trial court did not abuse its discretion in concluding that Walker was not unfairly surprised or unfairly prejudiced by the untimely disclosure and therefore, the trial court did not abuse its discretion in admitting Exhibit 33. *See Williams v. Cnty. of Dallas*, 194 S.W.3d 29, 33 (Tex. App.—Dallas 2006, pet. denied) (no abuse of discretion in admitting undisclosed documents supporting damages where face of pleading indicated that such damages would be sought at trial); *see also Marin v. IESI TX Corp.*, 317 S.W.3d 314, 323–24 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (exhibits admitted through fact witness were not required to be produced in response to Rule 194.2(f) disclosure request and were not subject to

20

exclusion under Rule 193.6).

We overrule Walker's complaint about the admission of Exhibit 33.

## 2. Lost Profits

The rule concerning recovery of lost profit damages is "well established:"

> Recovery for lost profits does not require that the loss be susceptible of exact calculation. However, the injured party must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates.

*ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010) (quoting

*Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)). Here, the

trial court awarded $36,646.39 in lost profits, based on the testimony of J.P.'s lost

profits expert, Lane Parish.

Walker argues that the lost profit award is improper in light of the release

and our earlier opinion, because Parish "admitted that his analysis and calculations

included amounts related to work performed prior to March 16, 2005." The record

reflects that Parish calculated J.P.'s lost profits by determining J.P.'s profit margin

on the project during the first several months and then applying that percentage to

the outstanding total contract amount, $132,043.40. This yielded a lost profits

calculation of $36,642.39.

We agree with Walker that, based on our prior opinion, any pre-March 16 lost profits may not be awarded to J.P. However, Parish testified that he only used pre-March 16 billing and cost data to determine J.P.'s "job profit percentage" on the project. He multiplied the percentage by the contract amount that was outstanding as of March 16, 2005 to ascertain the amount of profit J.P. would have earned had it performed all of the work contemplated by the contract. Accordingly, the record does not support Walker's contention that Parish's lost profits calculation awards J.P. damages for pre-March 16 lost profits.

Walker also argues that Parish's lost profits testimony was unreliable. Walker was required to raise this objection before trial or when the testimony was offered. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 816–17 (Tex. 2009). Walker did object to the admission of Parish's testimony at trial, but only on the grounds that Parish should not be permitted to testify given the limited scope of the remand. Accordingly, we hold this complaint is not preserved for our review. *See Pollock*, 284 S.W.3d at 816–17.

Walker does not complain that the evidence of lost profits is otherwise insufficient to support the lost profits award, and we conclude that it is. Parish testified in detail about the manner in which he determined J.P.'s profit margin,

22

and the post-March 16 lost profits figure. His conclusions were supported by Exhibit 33. Accordingly, we hold the lost profits evidence is "reasonably certain" and therefore legally and factually sufficient to support the lost profits award of $36,646.39. *Swinnea*, 318 S.W.3d at 876 (recovery for lost profits does not require that the loss be susceptible of exact calculation, but must be shown by reasonably certain evidence); *Anthony Equip. Corp. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191, 204–05 (Tex. App.—Dallas 2003, pet. dism'd) (application of profit margin percentage to anticipated total project amount indicated with reasonable certainty the amount of lost profits).

### 3. Pantle's testimony supporting unpaid work award

The trial court awarded J.P. $30,442.23 for work performed between March 16, 2005 and March 22, 2005. This was based on the testimony of J.P.'s president, Pantle. Walker argues that the trial court abused its discretion when it awarded this amount based on Pantle's testimony, because Pantle's testimony was not credible as a matter of law and it is therefore legally and factually insufficient to support the award. Walker argues that Pantle testified unequivocally in the 2007 trial that J.P. was owed only $19,501 for unpaid work, but on remand, Pantle testified that J.P. was entitled to a higher amount. Walker argues that this conflict makes Pantle's testimony on remand insufficient to support the award for unpaid work.

23

Pantle testified on remand that the $19,501 figure he offered at the first trial included amounts for February but not March. He clarified that he mistakenly confused damages for unpaid work with lost profits damages during the first trial. In addition, Pantle's testimony regarding the value of unpaid work was supported by J.P.'s invoices, ledgers, checks, and other business records reflecting the value of J.P.'s work performed between March 16, 2005 and March 22, 2005.

The trial court is the sole judge of Pantle's credibility and the weight to be given his testimony. *City of Keller*, 168 S.W.3d at 819; *Salomon*, 369 S.W.3d at 549. The trial court could believe or disbelieve Pantle's testimony, in whole or in part, and it was entitled to resolve any inconsistencies in Pantle's testimony. *Salomon*, 369 S.W.3d at 549. We will not disturb the trial court's determination that Pantle's testimony was credible. *City of Keller*, 168 S.W.3d at 819; *Ellis*, 971 S.W.2d at 407; *Salomon*, 369 S.W.3d at 549. We hold that legally and factually sufficient evidence supports the trial court's finding that J.P. was entitled to recover $30,442.23 for unpaid work.

### 4. Attorney's Fees

Walker argues that the trial court abused its discretion in admitting testimony on attorney's fees that had not been disclosed before the new trial. Walker contends that "Texas Rules of Civil Procedure 193.6 and 194.2 required

disclosure of the amount and any method of calculating damages." Walker apparently contends that evidence supporting a claim for attorney's fees, like "the amount and any method of calculating economic damages," must be disclosed under the timeframe prescribed in rule 194.2(d). *See* TEX. R. CIV. P. 194.2(d). However, where, as here, attorney's fees are not sought as an element of damages, they are not economic damages and are therefore not required to be disclosed in accordance with rule 194.2(d). *See Carter v. Flowers*, No. 02-10-00226-CV, 2011 WL 4502203, at *4 (Tex. App.—Fort Worth Sept. 29, 2011, no pet.) (mem. op.) ("Attorney's fees are not economic damages and are therefore not required to be disclosed under rule 194.2(d)."); *Shafer v. Gulliver*, No. 14-09-00646-CV, 2010 WL 4545164, at *11 (Tex. App.—Houston [14th Dist.] Nov. 12, 2010, no pet.) (mem. op.) (holding that Rule 194.2(d) did not require plaintiffs to disclose method of calculating attorney's fees). And, Walker agrees that J.P. properly designated its attorney as a testifying expert on fees pursuant to Texas Rule of Civil Procedure 194.2(f) and made the disclosures required by that provision. Walker does not otherwise challenge the sufficiency of the evidence to support the award of attorney's fees. Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's fee awards.

We overrule Walker's second issue.

## Conclusion

We modify the trial court's judgment to exclude the award of $7,105.28 for retainage and affirm the judgment as modified.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

26