**Opinion issued July 26, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00396-CV

———————————

## JOHN W. HANKINS, Appellant

## V.

## SARAH T. HARRIS, Appellee

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-01360**

---

## O P I N I O N

Appellant John W. Hankins appeals from a grant of summary judgment in

appellee Sarah T. Harris's suit to quiet title to real property. Hankins claims that he

has had an undivided one-half interest in the property since he foreclosed on a

judicial lien and recorded an execution deed in 1980. Hankins also asserts counterclaims for conversion, partition, and trespass to try title.

Harris argues that Hankins had no valid interest in the property at any time. She claims that the foreclosure sale was void due to both Texas's constitutional homestead protections and an automatic bankruptcy stay. In the alternative, Harris asserts that if Hankins had an interest in the property, she acquired that interest through adverse possession.

The trial court granted Harris's motion for summary judgment and found that: she owns the entire property in fee simple; Hankins has no interest in the property; the foreclosure sale and execution deed were null and void; and Hankins's counterclaims failed as a matter of law. Hankins appeals, arguing (1) the homestead exemption did not apply to void the execution sale; (2) the automatic bankruptcy stay did not apply; (3) Harris did not adversely possess the property; and (4) the trial court erred by dismissing his counterclaims for conversion, partition, and trespass to try title.

We conclude that the homestead exemption applied to the whole property at all relevant times and that the foreclosure sale and execution deed were therefore unconstitutional and void. We affirm the trial court's judgment accordingly.

**Background**

Sarah Harris's parents, Roy and Norma, acquired a home in West University Place in 1966, and they used it as their primary residence. In 1978, John Hankins obtained a judgment against Norma Harris and another party in an action for slander. Hankins recorded an abstract of the judgment against Norma.

In March 1980, Roy and Norma separated. Norma moved to Brownsville, Texas, and she later testified that after she left she did not intend to return to her former residence. Roy and Norma divorced on June 17, 1980. They executed a marriage settlement agreement which was approved by the family district court and incorporated in its final divorce decree as a just and right division. That agreement included the following language regarding the disposition of the home:

(1) Title to the house shall be transferred to and vested solely in Husband as his separate property.

(2) In return for the disposition of this asset to Husband, Husband agrees to pay Wife the sum of Fifty Thousand Dollars ($50,000.00) on the following terms and conditions: Fifty Thousand Dollars ($50,000.00) shall be paid in cash by Husband to Wife within six (6) months after the date of execution of this Agreement. As evidence of this obligation, Husband agrees to execute to Wife a promissory note in the principal sum . . . . The parties further stipulate and agree that payment of these sums to Wife represents an equitable division and distribution of the community property estate of the parties . . .

On August 6, 1980, Hankins requested a writ of execution and asked the constable to levy his interest in the property, with the prospective date of sale set for September 2. On August 29, Norma and Roy requested a temporary restraining order to prevent the execution sale. The district court set bond at $50,000, and Hankins alleges that the bond was never paid and the temporary restraining order was not issued. On September 1, Norma executed a special warranty deed to show that she had conveyed the property to Roy. Roy gave Norma a deed of trust to secure the purchase for $50,000, as stated in the marriage settlement agreement.

On the morning of September 2, Roy filed for bankruptcy, and the bankruptcy court issued an order specifically prohibiting the scheduled sale of the property due to the automatic bankruptcy stay. Nevertheless, the constable proceeded with the sale, and Hankins bought the levied portion and recorded an execution deed.

The Harris family continued to live on the property after the execution sale, and on several occasions Roy and Sarah transferred ownership of the property between them. Roy and Norma reconciled in 1981, and Norma eventually moved back to the property. Hankins asserted an interest in the property through four different sets of attorneys, each of whom sent a demand letter in 1984, 1990, 2005, and 2009, respectively. Harris's counsel responded each time by repudiating Hankins's purported interest, and each set of attorneys withdrew. Harris alleges

that Hankins never took any other action to claim the property or exercise his alleged rights.

Sarah inherited all of Roy's remaining interest in the property pursuant to a survivorship agreement after he passed away in 1999. After Hankins sent another demand letter in 2013, she filed suit to quiet title to the property. In response, Hankins filed counterclaims for, among other causes, partition, a declaratory judgment, and trespass to try title.

Harris moved for summary judgment to declare her exclusive ownership of the entire interest in the property and to dismiss Hankins's counterclaims. The trial court granted both of Harris's summary-judgment motions, and in its final judgment ordered that: (1) Harris owns the entire property in fee simple; (2) Hankins has no interest in the property; (3) the constable's sale was null and void; (4) Hankins's deed under execution, whereby he attempted to purchase Norma's interest, was null and void; (5) Hankins would take nothing on his counterclaims; and (6) Harris would recover her costs of court. Hankins appealed.

## Analysis

We review a trial court's grant of summary judgment de novo. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). We must reverse if there is more than a scintilla of probative evidence that raises a genuine issue of material fact. *Id.*; *see also* TEX. R. CIV. P. 166a(c). We review the record "in the light most favorable to

5

the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). Undisputed evidence may be conclusive of the absence of an issue of material fact, but only if no reasonable person could differ in his conclusion as to that evidence. *See id.* at 814. When there are multiple theories presented to the trial court for summary judgment, we must affirm the judgment if any of those theories preserved for appellate review are meritorious. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

In his first issue, Hankins claims that Harris failed to establish as a matter of law that the homestead exemption invalidated the execution sale. Hankins argues that after the divorce, Norma possessed a co-tenancy in the property that she abandoned, allowing his lien to attach. Hankins claims Roy no longer had a family homestead but rather a single-adult homestead that would protect only his half-interest in the community property. Hankins also argues that Roy did not own the entire property on the execution date, because the marital settlement agreement anticipated only a future transfer rather than a final division of the property.

Harris responds that Norma did not abandon her interest in the property, and Roy's homestead interest alone was able to protect the entire property from levy and foreclosure. In the alternative, she argues that at the time of the levy, Norma

owned no interest in the property that she could abandon or that Hankins could purchase.

When an abstract of judgment is recorded and indexed it constitutes a lien and attaches to any real property owned by the defendant that is not exempt. *See* TEX. PROP. CODE § 52.001; *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 38 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Generally, a lien may not attach to property that is held as the debtor's homestead, because the Texas Constitution provides that homestead property is exempt from forced sale to pay debts, except for certain specified categories of debts. *See* TEX. CONST. art. XVI, § 50; *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 634 (Tex. 1987). The constitutionally allowed exceptions to the homestead exemption include debts for: (1) purchase money of the property; (2) taxes due on the property; (3) owelty of partition by court order or written agreement; (4) refinance of a lien against the property; (5) certain work and materials to improve, renovate, or repair the property; (6) certain extensions of credit; (7) reverse mortgages; and (8) conversion and refinance of a personal property lien secured by a manufactured home to a lien on real property. *See* TEX. CONST. art. XVI, § 50(a). The forced sale of a homestead property for a debt not specifically allowed by the Texas Constitution is void, and the purchaser receives no rights in the property. *See* TEX. CONST. XVI, § 50; TEX. PROP. CODE § 41.002; *Heggen v. Pemelton*, 836 S.W.2d 145, 148

7

(Tex. 1992); *Salomon v. Lesay*, 369 S.W.3d 540, 555 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The homestead exemption exists to provide a secure home for the family against creditors. *See Jones v. Goff*, 63 Tex. 248, 254 (1885); *Ball, Hutchings & Co. v. Lowell*, 56 Tex. 579, 583 (1882). The exemption is liberally construed to further its purposes. *See Inwood N. Homeowners' Ass'n*, 736 S.W.2d at 635; *Andrews v. Sec. Nat'l Bank of Wichita Falls*, 121 Tex. 409, 417, 50 S.W.2d 253, 256 (1932). No specific writing is needed to claim a homestead exemption, but instead merely "proof of concurrence of usage and intent on the part of the owner to claim the land as a homestead." *Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex. App.—Houston [1st Dist.] 1983, no writ).

A homestead can belong to either a family or to a "single adult person." TEX. CONST. art. XVI, § 50(a). The constitutional family homestead exemption applies to the entire family, and not to either spouse individually. *See Crowder v. Union Nat'l Bank of Houston*, 114 Tex. 34, 39, 261 S.W. 375, 377 (1924). Therefore, so long as real property is a family homestead due to one spouse's intention and use, that property is protected by the homestead exemption, unless full abandonment has been pleaded and proved. *Salomon*, 369 S.W.3d at 555; *see also Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 596 (Tex. App.—Dallas 2009, no pet.).

8

Once a property has been established as a homestead, the property remains exempt unless it ceases to be a homestead due to abandonment, alienation, or death. *Denmon*, 285 S.W.3d at 595; *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied). "Abandonment of a homestead occurs when the homestead claimant ceases to use the property and intends not to use it as a home again." *Churchill v. Mayo*, 224 S.W.3d 340, 345 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "[A]nyone asserting abandonment [of a homestead] has the burden of proving it by competent evidence." *Caulley v. Caulley*, 806 S.W.2d 795, 797 (Tex. 1991).

If a property is exempt because it is the debtor's homestead, a lien will attach only if the property interest loses its homestead character. *See Fairfield Fin. Grp. Inc. v. Synnott*, 300 S.W.3d 316, 321 (Tex. App.—Austin 2009, no pet.); *Wilcox*, 103 S.W.3d at 473; *Posey v. Commercial Nat'l Bank*, 55 S.W.2d 515, 517 (Tex. Comm'n App. 1932, judgm't adopted). A judgment debtor may sell a homestead "and pass title free of any judgment lien, and the purchaser may assert that title against the judgment creditor." *Cadle Co. v. Harvey*, 46 S.W.3d 282, 285 (Tex. App.—Fort Worth 2001, pet. denied). If the lien attaches, the lienholder may acquire an interest no greater than that held by the judgment debtor. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 131 (Tex. 1991); *Johnson v. Darr*, 114 Tex. 516, 520–21, 272 S.W. 1098, 1099 (1925).

In Texas, spouses may divide their community property through a "marital property settlement agreement" that can "direct the payment of money as consideration for the conveyance of an interest in real estate." *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984). When such an agreement is reached, even though incorporated into a final divorce decree, it is treated as a contract and governed by the law of contracts rather than the law of judgments. *See Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986); *McGoodwin*, 671 S.W.2d at 882. As in a contract for a sale of land, when a property settlement agreement directs the payment of money as consideration for the conveyance of an interest in real estate, this creates a purchase-money vendor's lien for the spouse who sells her share of the property. *See McGoodwin*, 617 S.W.2d at 882. The holder of the vendor's lien no longer has title to the property, but she can use it as an encumbrance against the property to satisfy the debt. *Karigan v. Karigan*, 239 S.W.3d 436, 439 (Tex. App.—Dallas 2007, no pet.); *Day v. Day*, 610 S.W.2d 195, 199 (Tex. Civ. App.—Tyler 1980, writ ref'd n.r.e.).

In *Fairfield Financial Group, Inc. v. Synnott*, 300 S.W.3d 316 (Tex. App.—Austin 2009, no pet.), the appellant had obtained a judgment solely against the husband of the appellee and abstracted it. *Id.* at 319. The husband and appellee divorced. *Id.* The husband moved out of their shared homestead, and he later executed a special warranty deed conveying the entire homestead to the appellee.

10

*Id.* After the appellant sought to attach a lien to the house, appellee filed a suit to quiet title based on the homestead exemption, and the trial court granted her motion for summary judgment. *Id.* The appellant appealed, claiming a genuine issue of material fact regarding whether the husband abandoned the homestead and allowed its lien to attach. *Id.* at 319–20. The Third Court of Appeals concluded that regardless of whether and when the husband had abandoned the property, it remained protected at all times by the appellee's undivided homestead interest. *Id.* at 321. Accordingly, it affirmed the judgment and stated that the appellant's liens did not attach. *Id.* at 323.

In *Laster v. First Huntsville Properties Co.*, 826 S.W.2d 125 (Tex. 1991), the appellant and her husband entered into a divorce agreement which divided the community property residence, giving the appellant a 73.83% interest and the husband a 26.17% interest. *Id.* at 127. The appellant and her children also were given the right to use and occupy the residence until the younger of the children reached eighteen years of age or was no longer in school. *Id.* at 127–28. The husband used his post-divorce interest to secure a promissory note. *Id.* at 128. He defaulted on the note, and the appellee bought that interest and sought to partition the residence. *Id.* The Supreme Court of Texas held that the divorce created a homestead interest for the appellant, but only a vested future interest for her husband. *See id.* at 130. Because a vested future interest can be freely mortgaged or

alienated, the husband was able to use it to secure the promissory note. *See id.* The Supreme Court concluded that after the children had reached the age of eighteen, the homestead right only protected the portion of the homestead in which the appellant had a possessory interest—the 73.83% of the property that she owned. *Id.* at 131–32. As a result, the appellee was able to partition the residence. *See id.* at 132.

Hankins generally relies on *Laster* for the proposition that a divorce creates a co-tenancy that can lead to a portion of the home being non-exempt and allowing a lien to attach. He argues that because divorce precludes the property from being a family homestead, *Synnott* was wrongly decided and should not be followed. However, *Laster* is readily distinguishable from both *Synnott* and this case. In *Laster*, the husband mortgaged a future interest in the home, not a homestead interest. *See id.* at 130. The co-tenancy caused by the husband's alienation was thus a result of the divorce court's just and right division of the community property, which created that future interest. *See id.* at 131.

In contrast, in both *Synnott* and the appeal before us, the divorce agreements that were incorporated into the final decrees included stipulations that the entire property would be transferred to the other spouse in exchange for financial consideration. *See Synnott*, 300 S.W.3d at 319. Before the divorce, each spouse had an undivided homestead interest as a family member. *See id.* at 321; *see also*

*Salomon*, 369 S.W.3d at 555 ("[S]o long as real property is a family homestead by virtue of one spouse's intention and use, that property is protected by the homestead exemption, unless abandonment is pleaded and proved."). After the divorce, the remaining spouse received the full homestead interest pursuant to the divorce decree and transfer of land. *See Synnott*, 300 S.W.3d at 323; *see also Karigan*, 239 S.W.3d at 439 (equitable lien is not estate in property).

Therefore, both before and after the divorce, the spouse that received the transfer had an undivided, possessory homestead interest that prevented a judgment lien from attaching, unlike the divided interest in *Laster*. *See Laster*, 826 S.W.2d at 131–32; *Synnott*, 300 S.W.3d at 323; *Salomon*, 369 S.W.3d at 556. Hankins contends that the conversion of the homestead from a family to a single-adult homestead prevented Roy from claiming a homestead interest in the whole property. However, as in *Laster,* this is irrelevant, as "the result would be the same under either classification." 826 S.W.2d at 131. The issue of whether and when Norma abandoned her homestead interest is similarly immaterial, because as in *Synnott*, Roy's homestead interest protected the property at all times. *See Synnott*, 300 S.W.3d at 321–22.

We conclude that Roy's undivided homestead interest protected the property at all relevant times and prevented Hankins's lien from attaching, rendering the

foreclosure sale and execution deed unconstitutional and void. *See Salomon*, 369 S.W.3d at 556. We overrule Hankins's first issue.

Because the foreclosure sale and execution deed were void, Hankins never possessed a valid interest in the property, and we need not reach the questions raised in his second and third issues of whether the automatic bankruptcy stay applied or Harris adversely possessed the property. Given our conclusion that Hankins does not have a valid interest in the property, he cannot prove title, and his counterclaims for conversion of rent, partition, and trespass to try title are also barred as a matter of law for lack of standing. *See* TEX. PROP. CODE §§ 22.001–.002, 23.001; *cf. Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993); *Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982); *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386–87 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 807 (Tex. App.—San Antonio 2014, pet. denied); *Wells v. Kansas Univ. Endowment Ass'n*, 825 S.W.2d 483, 487–88 (Tex. App.—Houston [1st Dist.] 1992, writ denied). We overrule Hankins's fourth issue.

## Conclusion

We conclude that the trial court correctly granted summary judgment for Harris, and we affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.