# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00713-CV

**Texas Rock Solid Building Services, LLC, Appellant**

**v.**

**Robert Pounds and Camille Pounds, Appellees**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-007343, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Texas Rock Solid Building Services, LLC (Rock Solid) appeals from the trial court's orders (1) invalidating a mechanic's lien it perfected on residential property and ordering it to pay appellees' attorney's fees incurred in invalidating the lien and (2) denying its motion for leave to file third-party claims and determining that the case had been terminated upon appellees' filing a notice of nonsuit. For the following reasons, we affirm the orders.

## BACKGROUND

Appellees Robert and Camille Pounds hired Rock Solid to install stucco and stone cladding on a home (Property) they were building, and the parties executed a contract related thereto.[1] After a dispute arose over payment and work quality, Rock Solid filed a mechanic's lien on the Property, *see* Tex. Prop. Code § 53.021 ("Persons Entitled to Lien"), and thereafter

---

[1] Because the Poundses share the same surname, for clarity we use their first names when referring to them individually.

the Poundses filed an original petition and verified summary motion to remove the lien, *see id.* § 53.160 ("Summary Motion to Remove Invalid or Unenforceable Lien"). In their petition, the Poundses asserted causes of action including negligence, fraud, breach of contract and warranty, and violations of the Texas Deceptive Trade Practices Act. In their summary motion, the Poundses alleged that the lien was invalid because the Property was their homestead and the contract with Rock Solid was not signed by both spouses, as required. *See id.* § 53.254(c) (providing that to "fix a lien on a homestead," written contract for materials or labor must be signed by both spouses). The Poundses attached several documents as evidence to their verified motion. Rock Solid answered with a general denial and later filed a motion for leave to file third-party claims, attaching thereto an exhibit containing a copy of a pleading it sought leave to file entitled, "First Amended Answer and Original Third Party Claims and Original Counterclaims." *See* Tex. R. Civ. P. 38(a) (requiring defendant to seek leave of court to file third-party petition if more than thirty days have elapsed since original answer was served).

On March 8, 2022, after a hearing on the Poundses' summary motion to remove the lien, the trial court rendered an order (the First Order) granting the motion and ordering Rock Solid to do all things necessary to release or remove the lien and to pay the Poundses $9,523.25 in attorney's fees by April 15, 2022. *See* Tex. Prop. Code § 53.156 (providing that court "shall" award costs and reasonable attorney's fees as are "equitable and just" "in any proceeding to declare that any lien . . . is invalid or unenforceable"). The trial court did not specify the grounds for its determination, stating generally that Rock Solid's lien "was not properly perfected and is therefore void and invalid and . . . has no further force or effect." Thereafter, on July 15, 2022, the Poundses filed a notice of nonsuit without prejudice. On August 9, 2022, the trial court rendered an order (the Second Order) denying Rock Solid's

2

motion for leave to file third-party claims and ordering that, "pursuant to Rule 162 of the Texas Rules of Civil Procedure . . . this case was terminated upon the [July 15, 2022] filing of Plaintiffs' Notice of Nonsuit." The court further found that it "lacks jurisdiction to hear Defendant's Motion for Leave."[2]

## DISCUSSION

*Rock Solid's Issues*

In its second issue, which we address first, Rock Solid contends that the trial court erred in rendering its First Order awarding appellees attorney's fees when granting their motion to invalidate the lien. Rock Solid contends that it was not "equitable and just" to award fees because the litigation was ongoing and there were "questions of fact and law that remained" about whether the Property was the Poundses' homestead when it filed the lien. Rock Solid also contends that the fee award was not equitable because it had no avenue for interlocutory appeal of the order. *See* Tex. Prop. Code § 53.160 (providing that party to proceeding to invalidate lien "may not file an interlocutory appeal from the court's order").

---

[2] Although before submission of this case this Court sua sponte questioned whether it had jurisdiction over this appeal because it appeared there was no final order in the case, we have since determined that the Second Order constituted a final order because its language as a whole, in context of the record—including that Rock Solid had no pending claims for affirmative relief—demonstrates that the trial court intended it to be a final order. *See In re Elizondo*, 544 S.W.3d 824, 827–28 (Tex. 2018) (per curiam) (noting that regardless of label put on order and that final order need not be in any particular form, courts look to language in order and place it in context of record to determine whether trial court intended it to be final); *Lehman v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001) (noting that order that actually disposes of all claims and parties is final). No further parties and claims were at issue after the nonsuit notice, and thus the court's Second Order determining that the nonsuit had "terminated" the case and that it no longer had jurisdiction to hear Rock Solid's motion for leave effectively operated as a final order dismissing the suit.

3

The Poundses, having filed a summary motion to remove an allegedly invalid lien, bore the burden of proving that the lien was invalid. *See In re M & O Homebuilders, Inc.*, 516 S.W.3d 101, 107 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) (noting that summary motion seeking invalidation of lien operates as motion for summary judgment); *see also* Tex. R. Civ. P. 166a (outlining summary-judgment standard). The two grounds the Poundses cited in their motion to support their claim of invalidity are Property Code Section 53.160 and Civil Practice and Remedies Code Section 12.006. *See* Tex. Prop. Code § 53.160; Tex. Civ. Prac. & Rem. Code § 12.006. Because the trial court did not specify the basis of its granting relief for the Poundses, we will affirm the order if either asserted ground supports relief. *See Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Both grounds rely on the Poundses' assertion that the Property was their homestead at all relevant times and that because the construction contract with Rock Solid was signed by only one spouse, the lien was invalid. *See* Tex. Prop. Code §§ 53.254(c); *see also id.* § 53.160(b)(6)(A) (including contract's failure to meet requirements of Property Code Section 53.254 among grounds that support invalidation of lien); Tex. Gov't Code § 51.901(c)(2)(A) (providing that document or instrument purporting to create lien on property is presumed to be fraudulent if it is not provided for by state or federal law); Tex. Civ. Prac. & Rem. Code § 12.006 (mandating award of attorney's fees for plaintiff's action to remove fraudulent lien described by Government Code Section 51.901(c)).

To support their claim of invalidity, the Poundses attached to their summary motion the following evidence: (1) the January 27, 2021 construction contract between Rock Solid and "Pounds Homes," containing the illegible signature of only one person, identified as "owner"; (2) a "Designation of Homestead and Affidavit of Nonhomestead" (Designation) filed in the official public records of Travis County by both Robert and Camille on October 25, 2021;

4

and (3) a "Supplement to Designation of Homestead and Affidavit of Nonhomestead" (Supplement) filed in the official public records of Travis County by both Robert and Camille on February 11, 2022. In their respective Designations, the Poundses averred that the Property is their homestead, they are the record title holders of the Property, and they "do not now reside or ever again intend to reside" at or claim as a homestead a specified property different from the Property at issue in this lawsuit. In their respective Supplements, the Poundses averred that they "own and reside, or intend to reside, when construction is completed, [at] the [P]roperty," which they, as spouses, acquired around July 9, 2020, "for the sole purpose of constructing our homestead and abode to reside." Further, they averred that at the "time of purchase, we did not own any other homestead property."

Rock Solid submitted the following evidence to oppose the Poundses' summary motion: (1) the affidavit of its operations manager, averring that the subject contract was between Rock Solid and Pounds Homes (a "custom home builder" and corporate entity), not between Rock Solid and either Robert or Camille individually; (2) a copy of the subject contract; (3) a copy of the affidavit that Rock Solid filed to perfect its lien, which listed the Property owners as Robert and Camille; and (4) copies of Robert's and Camille's Designations and Supplements. Rock Solid argued in its response to the Poundses' summary motion and argues again on appeal that "questions of law and fact" precluded summary disposition for the Poundses because (a) the contract was entered into with Pounds Homes, (b) the lien was filed against Pounds Homes, and (c) the Designations and Supplements were not filed until *after* the lien was filed.

A mechanic's lien attaches to specific *property* and is a claim against property to secure the payment of a debt; it is not a claim against a specific person. *See* Tex. Prop. Code

5

§ 53.022 ("Property to Which Lien Extends"); *see also* Tex. Const. art. XVI, § 37 ("Mechanics, artisans and material men . . . shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor."). Thus, Rock Solid's arguments about the contract being between it and Pounds Homes and the lien being filed "against" that entity are inapposite. Instead, the dispositive question is whether, when the contract was executed, the Property was the Poundses' homestead. *See McKee v. Wilson*, 174 S.W.3d 842, 845 (Tex. App.—Waco 2005, no pet.) (noting that relevant date for purposes of determining homestead status of property subject to purported mechanic's lien is date of construction contract).

Rock Solid contends that the filing date of the Designations and Supplements—which was indisputably *after* it had filed its lien—compels the conclusion that the Property was not the Poundses' homestead *before* that date. But the filing of a homestead designation is neither necessary to establish a homestead nor dispositive of the date when a property became a party's homestead. *See Hankins v. Harris*, 500 S.W.3d 140, 145 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("No specific writing is needed to claim a homestead exemption, but instead merely 'proof of concurrence of usage and intent on the part of the owner to claim the land as a homestead.'" (citation omitted)); *In re Smith*, No. 4:13-CV-1313, 2016 WL 1266522, at *4 (S.D. Tex. Mar. 31, 2016) (noting that, under Texas law, no written designation of homestead is required, and debtor's failure to designate homestead until after deed was executed did not affect its homestead claim); *see also* Tex. Prop. Code § 41.005 (allowing persons to "voluntarily designate" real property as their homestead and file such designation with county clerk of county where property is located). Thus, Rock Solid's argument that the Designations and Supplements were filed after the lien was filed is not dispositive of whether the Property

6

was the Poundses' homestead when the contract was executed and thus whether the lien was properly perfected.

Texas courts have held consistently "from an early day" that property purchased for use as a homestead acquires such character on the date of acquisition of the property, even in preference to judgment liens already recorded against the property purchaser. *See Hughes v. Groshart*, 150 S.W.2d 827, 830 (Tex. App.—Amarillo 1941, no writ). In their Supplements, the Poundses averred that the Property became their homestead on the date they purchased it—about six months before the construction contract was executed—and had remained their homestead ever since. *See Hankins*, 500 S.W.3d at 145 ("Once a property has been established as a homestead, the property remains exempt unless it ceases to be a homestead due to abandonment, alienation, or death."). Rock Solid filed no evidence controverting such averments, relying only on its legal arguments pertaining to the filing date of the Designations and Supplements, which we have rejected.

The undisputed evidence establishes that the Poundses purchased the Property with the intent to build a home in which to reside as their homestead, that they owned no other homestead property at the time of purchase, and that they began constructing a home on the Property after purchase. The evidence also establishes that such purchase date was before the construction contract. An owner may establish a homestead before he or she takes up occupancy "if the owner intends to occupy and use the premises within a reasonable and definite time in the future, and has made such preparations toward actual occupancy that 'are of a character and have proceeded to such an extent as to manifest beyond a doubt the intention to complete the improvements and reside upon the place as a home.'" *Pierce v. Washington Mut. Bank*, 226 S.W.3d 711, 715 (Tex. App.—Tyler 2007, pet. denied), *abrogated on other grounds by*

*Lujan v. Navistar, Inc.*, 555 S.W. 3d 79 (Tex. 2018); *see McKee*, 174 S.W.3d at 844 ("Where no homestead dedicated by actual occupancy exists, effect may be given to ownership, intention, and preparation to use for a home."). This allows a claim of homestead to be made to property that is not yet being occupied, so long as steps are taken towards making the property subject to being occupied, including (as here) building a house. *See, e.g.*, *Siller v. LPP Mortg., Ltd.*, 264 S.W.3d 324, 329 (Tex. App.—San Antonio 2008, no pet.); *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 809 (Tex. App.—Austin 2004, pet. denied). Accordingly, the trial court did not err in determining that the lien was not properly perfected on the Poundses' homestead Property because both spouses did not sign the construction contract.

As to Rock Solid's argument that the trial court abused its discretion in ordering it to pay attorney's fees "in the midst of ongoing litigation," it cites no authority prohibiting trial courts from so doing, and we have not found any.[3] Additionally, Rock Solid does not explain the significance of its complaint that the applicable statute prohibited it from filing an interlocutory appeal of the attorney's fees. *See* Tex. Prop. Code § 53.160(e). Moreover, even if the trial court had erred in awarding fees amid litigation rather than at its termination, Rock Solid has not alleged that it was harmed thereby, and we can discern no harm based on our holdings in this case that the trial court did not err in invalidating the lien or (as explained below) in denying Rock Solid's motion for leave. We accordingly overrule Rock Solid's second issue.

In its first issue, Rock Solid contends that the trial court erred in denying its motion for leave and rendering its Second Order because it had "pending claims for affirmative

---

[3] The sole case Rock Solid cites notes merely that the trial court, after ordering that an invalid lien be removed, chose to defer ruling on the plaintiffs' associated request for attorney's fees until all issues in the case—including the defendant's counterclaims—had been determined. *See R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 701 (Tex. App.—Waco 2008, pet. denied). The propriety of a deferred ruling was not at issue. *See id.*

relief." Rock Solid correctly cites Texas Rule of Civil Procedure 162, which prohibits the dismissal of a case through a party's notice of nonsuit if there are pending claims for affirmative relief by an adverse party. *See* Tex. R. Civ. P. 162. Rule 162 is liberally construed in favor of the right to nonsuit. *Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1982) (per curiam). Rock Solid contends that its third-party claims and counterclaims against the Poundses, which it outlined in the exhibit attached to its motion for leave, constituted pending claims for affirmative relief. We disagree.

A notice of nonsuit is effective immediately upon filing, extinguishing a case or controversy from the moment it is filed. *See University of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006). While the date on which the trial court signs an order dismissing the suit is the "starting point for determining when a trial court's plenary power expires," a nonsuit is effective when it is filed. *Id.* A trial court generally has no discretion to refuse to dismiss the suit, and its order doing so is ministerial. *Id.* However, a notice of nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief," and a dismissal pursuant to a nonsuit "shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal." *See* Tex. R. Civ. P. 162; *Blackmon*, 195 S.W.3d at 100–01 (noting that, although defendant had not raised claim for affirmative relief, it had requested costs in its plea to jurisdiction, and trial court therefore retained plenary power to hold hearings and render orders affecting costs, fees, and sanctions despite plaintiff's notice of nonsuit, which had rendered merits of case moot); *In re Martinez*, 77 S.W.3d 462, 464 (Tex. App.—Corpus Christi–Edinburg 2002, orig. proceeding) ("[T]he trial court has no discretion to deny the nonsuit and is required to perform the ministerial act of signing an order of dismissal, unless the defendant has, prior to notice of nonsuit, filed

9

pleadings seeking some form of affirmative relief."). As provided in the rule, some motions survive a notice of nonsuit, but a motion for leave to file a pleading is not among them. *See* Tex. R. Civ. P. 162. Rock Solid has cited no authority to support its argument that its motion for leave survived the Poundses' notice of nonsuit, and we have found none.

As to Rock Solid's contention that it had pending claims for affirmative relief by virtue of its pending motion for leave—to which it had attached a copy of its third-party claims and counterclaims—the record demonstrates that Rock Solid never actually filed any third-party claims or counterclaims.[4] *Cf. Progressive Ins. v. Hartman*, 788 S.W.2d 424, 427 (Tex. App.— Dallas 1990, no writ) ("The existence of adverse claims is not sufficient to deprive a plaintiff of its right to nonsuit. . . . [R]ule 162 require[s] that the adverse claims *actually be filed and pending* at the time plaintiff files its motion to nonsuit." (emphasis added)). To assert a claim for affirmative relief, a defendant must assert a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation, or relief. *See General Land Office of Tex. v. OXY, U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990). The assertion of counterclaims in a document attached as an exhibit to a motion for leave seeking permission to file such exhibit is not the same as filing the document itself. *Cf. I-10 Colony, Inc. v. Chao Kuan Lee*, 393 S.W.3d 467, 480 & n.13 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (deeming filing date of amended petition as date when trial court granted motion for leave, not date motion for leave was filed); *Valverde v. Biela's Glass & Aluminum Prods., Inc.*, 293 S.W.3d 751, 754–55 (Tex. App.—San Antonio 2009, pet. denied) (holding that motion for leave to designate responsible third party becomes effective only upon trial court's granting it). Rock Solid never actually filed

---

[4] The record also reflects that Rock Solid did not pay a filing fee to file a counterclaim or third-party claim.

any counterclaims but merely included them in an instrument *it sought leave to file* and for which filing it had *not* obtained permission when the Poundses nonsuited their remaining claims.

Moreover, because more than thirty days had elapsed since it filed its original answer, Rock Solid was required to obtain leave of court before filing its third-party petition, in which instrument, exclusively, its counterclaims appeared. *See* Tex. R. Civ. P. 38(a). Because the trial court had not granted leave to file the pleading when the Poundses filed their notice of nonsuit, no pending claims for affirmative relief existed because, until leave was granted, Rock Solid's "counterclaims" remained merely a reference in an exhibit attached to its motion for leave rather than an actual "pleading" or "affirmative claim for relief."[5] *Cf. Blackmon*, 195 S.W.3d at 101 ("A claim for affirmative relief must allege a cause of action, independent of the plaintiff's claim, on which the claimant could recover compensation or relief."); *see also* Tex. R. Civ. P. 21(f)(5)(b) (noting that for documents required to be electronically filed, if subject document requires motion and order allowing its filing, subject document is deemed filed on date motion is granted rather than when subject document is transmitted to electronic filing service provider). We hold that Rock Solid had no pending affirmative claims for relief when the Poundses filed their notice of nonsuit. Thus, the trial court did not err in determining that the case had "terminated" upon the Poundses' filing their notice of nonsuit.[6] We accordingly overrule Rock Solid's first issue.

---

[5] We find nothing in the record or the Rules of Civil Procedure that would have precluded Rock Solid from filing its counterclaims—independently of its third-party claims—at any time before the Poundses nonsuited their case.

[6] Although before submission of this case this Court sua sponte questioned whether it had jurisdiction over this appeal because it appeared there was no final order in the case, we have since determined that the Second Order constituted a final order because its language as a whole, in context of the record—including that Rock Solid had no pending claims for affirmative

**CONCLUSION**

Having overruled Rock Solid's issues, we affirm the trial court's two orders (1) invalidating Rock Solid's lien and awarding attorney's fees to the Poundses and (2) denying Rock Solid's motion for leave to file third-party claims and determining that the case had been terminated by virtue of appellees' notice of nonsuit.

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:   July 25, 2024

---

relief—demonstrate that the trial court intended it to be a final order. *See In re Elizondo*, 544 S.W.3d 824, 827–28 (Tex. 2018) (per curiam) (noting that regardless of label put on order and that final order need not be in any particular form, courts look to language in order and place it in context of record to determine whether trial court intended it to be final); *Lehman v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001) (noting that order that actually disposes of all claims and parties is final).  No further parties and claims were at issue after the nonsuit notice, and thus the court's Second Order determining that the nonsuit had "terminated" the case and that it no longer had jurisdiction to hear Rock Solid's motion for leave effectively operated as a final order dismissing the suit.